721 A.2d 12

CHARLOTTE M. MACKOWSKI, PLAINTIFF–RESPONDENT,
v. WALTER MACKOWSKI, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted November 10, 1998—Decided December 4, 1998.

Kestin, J.A.D., filed concurring opinion.

Before Judges KESTIN, WEFING and CARCHMAN.

*John W. Spoganetz*, attorney for appellant.

*Charlotte M. Mackowski*, respondent pro se, did not file a brief.

The opinion of the court was delivered by

CARCHMAN, J.A.D.

This post-divorce litigation primarily concerns the custody of the parties' youngest child, Melanie Mackowski, age 16. Defendant Walter Mackowski, the child's father, appeals from an order of October 10, 1997, denying his motion for (1) a transfer of physical custody of Melanie from plaintiff Charlotte M. Mackowski, the child's mother, to himself; (2) termination of his child support obligation for Melanie; (3) recalculation of his child support payments and imposition of a child support obligation on plaintiff; (4) sale of the parties' home in which plaintiff resides with Melanie, the two emancipated children of the marriage, and her boyfriend; (5) production of evidence of the status of a mutual fund established for the children's education; and (6) payment of rent by plaintiff's boyfriend. On appeal, defendant asserts that the trial court should have held a hearing on the issues presented

and should have interviewed the child. We agree and reverse and remand for further proceedings.

Defendant's motion was supported by a certification which stated, among other things, that Melanie wanted to live with her father. The motion requested oral argument if opposition was filed. Plaintiff filed an opposing certification taking issue with many of defendant's assertions of fact but not denying that Melanie wanted to live with her father. Plaintiff responded with a second certification to which he attached three letters from Melanie directly in support of the subject motion, all containing expressions of Melanie's desire to live with defendant. The certification also requested that the trial judge "speak directly to my daughter so that the court can see how sincere and mature my daughter really is."

The trial court refused the request for oral argument and entered its order without making any findings of fact or stating any conclusions of law. After receiving defendant's notice of appeal, the trial court, on December 2, 1997, placed an oral opinion on the record in support of its October 10, 1997, order stating that it had adopted the facts contained in plaintiff's certification.

The trial court's opinion contains these pertinent statements:

[T]he Court merely adopted the facts contained within the certification of Charlotte Mackowski.

. . . .

I did not [interview the child] and my reasons for not doing that is that I did not find any compelling reasons to have Melanie leave her present situation. And I just did not want to place her in the middle of choosing between her father and her mother.

. . . .

I did not order a hearing because the hearing would basically come down to Melanie having again to testify against her mother as to why she should live with her father. That type of hearing, I find, from the facts that I have before me, and I pretty much adopt the facts contained within the certification of Charlotte Mackowski, would be very harmful to the ... whole situation, to the mother and father and to the child.

It is evident from the body of the brief that the mutual funds issue is no longer in dispute. Although there is a minor reference

to a desire to explore, at the requested hearing, the alleged obligation of the boyfriend to pay rent, no authorities are cited on that matter. Nor does the brief address the request for a court ordered sale of the house. We deem this issue to be abandoned. *See R.* 2:6–2; *McGarry v. St. Anthony of Padua,* 307 *N.J.Super.* 525, 531, 704 *A.*2d 1353 (App.Div.1998). Consequently, we will limit our discussion to the custody issue, without prejudice to defendant's rights to seek reconsideration before the trial court on the other matters.

*R.* 5:8–6 requires a plenary hearing to be conducted where custody of children is a *genuine and substantial issue,* [and] the court *shall* set a hearing date no later than 3 months after the last responsive pleading.... As part of the custody hearing, the court *shall ... at the request of a litigant conduct an interview with the child(ren) if the child(ren) are age 7 or older.*
[Emphasis added.]

Nothing in the trial court's opinion indicates that it did not believe there was a genuine and substantial issue regarding Melanie's custody, and from our review of the certifications, we are satisfied that such an issue existed. Thus, the failure to conduct a plenary hearing and to interview the child was inconsistent with *R.* 5:8–6 and our decisions in *G.C. v. M.Y.,* 278 *N.J.Super.* 363, 368, 651 *A.*2d 110 (App.Div.1995) (concluding it was improper to make a custody decision on an emergent basis without a plenary hearing and interview with the children in the absence of imminent or threatened harm to the children), and *Lavene v. Lavene,* 148 *N.J.Super.* 267, 273, 372 *A.*2d 629 (App.Div.), *certif. denied,* 75 *N.J.* 28, 379 *A.*2d 259 (1977). The trial court's order was based on its evaluation of conflicting affidavits and adoption of the assertions of one party over the other without the benefit of a plenary hearing. That course was also inconsistent with the requirements of *Wilke v. Culp,* 196 *N.J.Super.* 487, 501, 483 *A.*2d 420 (App.Div.1984), *certif. denied,* 99 *N.J.* 243, 491 *A.*2d 728 (1985) (holding it "basic that a case should not be decided merely on the basis of conflicting affidavits, or an inadequate record"), and *Fusco v. Fusco,* 186 *N.J.Super.* 321, 327–29, 452 *A.*2d 681 (App.Div.1982) (concluding resolution of visitation issues could not be made on

basis of conflicting certifications and otherwise insufficient record). *See also Wagner v. Wagner,* 165 *N.J.Super.* 553, 555, 398 *A.*2d 918 (App.Div.1979), *certif. denied,* 85 *N.J.* 93, 425 *A.*2d 260 (1980) (noting matters of child visitation are so important that a court should require a plenary hearing even when parties waive it); *Tancredi v. Tancredi,* 101 *N.J.Super.* 259, 262, 244 *A.*2d 139 (App.Div.1968) (concluding it was an abuse of discretion to resolve issues in favor of one party based entirely on conflicting affidavits).

Further comment is warranted regarding the judge's refusal to interview Melanie. We appreciate the concern expressed by the judge that by compelling Melanie to submit to an interview, the judge was compromising her loyalty to both parents by requiring her to "choose between the two." While such a view may have surface allure, in reality, it is both too narrow and, ultimately, unfair to the child. In making a determination as to an award of custody, or in this case a change in custody, a judge is charged with considering the factors set forth in *N.J.S.A.* 9:2–4, including an assessment of "the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision." The proper assessment of a child's ability to participate in the decision-making process, a right protected by statute, cannot be performed by a simple reading of an affidavit or letter from the child. We do not countenance such decision-making where there are contested issues requiring a plenary hearing, and we cannot accept the denial of a hearing premised on a notion or hope that such denial is protecting the child. The child has a right to be heard and voice an opinion to the finder of fact and ultimate decision-maker. The court need not be bound by the child's view but that cannot be a basis for denying the child the right to express a view if he or she chooses to do so.

We recognize that some judges prefer not to be involved in a process which can be uncomfortable for both the judge and the child. That, however, provides no justification for abrogating the responsibility to perform a function mandated by our rules of

court and necessary to fulfill a statutory duty. The concern that judges are ill-equipped to conduct such interviews speaks to the need for enhanced judicial training.[1] A carefully conceived and conducted interview can produce facts, including, among other things, information about interests, activities with parents, living arrangements and friends, that may be dispositive and at no time require that the child be confronted with the ultimate question requiring that an election between parents be made. We agree that no child should be asked to select between two opposing parents, and *R.* 5:8–6 does not speak in such stark terms. In this case, Melanie was sixteen years old, less than two years from majority. She filed a letter with the court expressing her preference for living with her father. An interview was necessary to allow the judge to carefully test the bona fides of Melanie's alleged choice.[2]

■ Our concurring colleague urges that the interview be conducted not by the court but by a mental health professional who will then report to the court. Ceding fact-finding responsibility to another party dilutes our ability, as judges, to decide issues based on the "best evidence" available. Our rules presently provide an opportunity for a custody investigation which may well include an analysis by a mental health professional. *See R.* 5:8–1; *R.* 5:3–3.

---

[1] The issue of judicial education for Family Part judges is not a matter that can easily be dismissed. The Final Report of the Supreme Court Special Committee on Matrimonial Litigation, now under consideration by the Supreme Court, strongly recommends significant judicial education for those judges assigned to that important part. (*Recommendation # 45:* The Judiciary Should Aggressively Implement A Comprehensive Program Of Family Part Judicial Education.) Appropriate education should include instruction regarding the interview of children in custody and other related cases.

[2] No mention is made in the record of whether this matter was referred to mandatory custody mediation consistent with *R.* 5:8–1 and *R.* 1:40–5(a) ("All ... motions involving a custody or visitation issue shall be screened to determine whether the issue is genuine and substantial, and if such determination is made, the matter shall be referred to mediation for resolution in the child's best interests."). The facts of this case, including the age of the child, suggest that this was an appropriate case for mediation.

But there is a more important practical concern. Too often, judges deciding issues in the Family Part must rely solely on the "voices" of the attorneys who prepare the competing affidavits and certifications on the pretense that the litigant is speaking. *R.* 5:8–6 insures that where custody is a "genuine and substantial" issue, the judge will not be insulated from seeing and hearing the subject of the dispute. The "voice" seen and heard will not be that of the lawyer or litigant but that of the child who is the subject of the dispute. The value of a properly conducted interview enabling the judge to see and hear the child first-hand outweighs the possibility of harm that may befall a child by being subjected to the interview process. On balance, it is not the interview that is ultimately harmful, but the custody dispute between the parties that potentially wrecks havoc with the child.

■ Lastly, we must comment on the refusal to grant defendant's request for oral argument. *R.* 5:5–4(a) grants discretion to the trial judge to allow oral argument but provides that "the court shall ordinarily grant requests for oral argument on substantive ... motions." We have interpreted this rule as mandating argument when significant substantive issues are raised and argument is requested. *Filippone v. Lee,* 304 *N.J.Super.* 301, 306, 700 *A.*2d 384 (App.Div.1997). The issues raised here involved a change of custody and the implications of such change on child support as well as other issues impacting the long-range relationship of the parties. The child custody issue alone, certainly a matter of substance, warranted oral argument. The denial of such argument deprives litigants of an opportunity to present their case fully to a court. Denial of such a right, given the issues in dispute, was an abuse of discretion and was violative of both the letter and spirit of *R.* 5:5–4(a).

Reversed and remanded for a plenary hearing on the issue of child custody and for such other proceedings as may be warranted consistent with this opinion.

KESTIN, J.A.D., concurring.

I concur with the result. It is clear that the custody issue should not have been decided without a plenary hearing.

Although the duty to conduct a child interview on request cannot be gainsaid by reason of the requirement in *R.* 5:8–6, I do not share my colleagues' enthusiasm for that requirement. I believe that child interviews in custody cases are unwise because they are harmful to the child, often irreparably so, with no significant offsetting benefit; and they impact in subtle and potentially destructive ways on parent-child relationships. Once a judge, as decision maker, conducts an interview with a child when the pending question is custody, nothing the judge or any other person can say or do will ever convince the child that he or she is not responsible for the ultimate decision that is made. This is a burden no child, of any age, should ever carry; it is one that may weigh heavily for years to come.

In our quest for just resolutions, we would do well to be governed by the dictum derived from Hippocrates: *primum non nocere* (first, do no harm). There is nothing the judge can learn from a direct interview that cannot be more reliably and less harmfully developed by referring the child and the parents to a specially qualified mental health professional for interviews, evaluations, and a report to the court, thereby insulating the child from a sense of direct involvement in the decision-making function. Obviously, this mechanism must be separate from whatever counselling or mediative efforts may also be undertaken, in which the disclosures of those involved must be kept strictly confidential.

Even the most talented, sensitive and conscientious judges are poorly suited to conduct child interviews in custody cases. It is entirely too facile to suggest that a bit of training can equip any of them with the resources that years of professional training and experience confer on those relatively few mental health practitioners who have special aptitude for the assignment.