723 A.2d 67 (1998)
318 N.J. Super. 90
Linda M. BLESS, Plaintiff-Appellant,
v.
Rudolf A. BLESS, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued December 14, 1998.
Decided December 31, 1998.
*69 Laura S. Witherington, West Long Branch, for plaintiff-appellant (Chamlin, Rosen & Uliano, attorneys; Ms. Witherington, on the brief).
Patricia E. Apy, Red Bank, for defendant-respondent (Paras, Apy & Reiss, attorneys; Ms. Apy, Christine C. Cockerill, and Scott B. Engleman, Freehold, on the brief).
Before Judges HAVEY, PAUL G. LEVY and LESEMANN.
*68 The opinion of the court was delivered by PAUL G. LEVY, J.A.D.
This is an international child custody dispute in which the trial judge refused to stay his prior order denying plaintiff's motion for modification of the parties' custody agreement and ordering the return of the parties' child to Switzerland on the ground that New Jersey lacked subject matter jurisdiction because Switzerland had become the child's home state. Plaintiff appeals, contending the judge erred in (1) determining that Switzerland had jurisdiction without determining whether New Jersey had concurrent jurisdiction and, if so, which of the two forums was more convenient for litigating the custody issue; (2) refusing to enforce the portion of the parties' agreement that reserved subject matter jurisdiction in New Jersey over custody disputes; (3) refusing to exercise jurisdiction on the request for a stay after having exercised jurisdiction on a previous motion to modify; and (4) making findings of fact that are unsupported by the record.
We conclude that New Jersey had subject matter jurisdiction, and therefore we reverse and remand.
The parties were married in 1987, their son Rudy was born in 1991 and they were divorced in 1994, the final judgment incorporating their property settlement agreement (PSA). The judgment provided for joint legal custody of Rudy with plaintiff designated as the primary residential parent; defendant was granted "fair, reasonable, and liberal visitation with [Rudy]." The parties were New Jersey residents, but sometime thereafter, defendant remarried and moved to Switzerland. That change of circumstance resulted in a consent order, filed April 28, 1995, modifying defendant's visitation schedule, given his relocation to Switzerland. Rudy's visits with defendant were tied to the Easter and Christmas holidays and the summer season. The consent order further provided: "Despite defendant's relocation to Zurich, Switzerland, any questions or disputes that may arise between the parties as to child support, custody and visitation shall remain subject to the jurisdiction of New Jersey."
During the summer of 1995, Rudy spent approximately six weeks with defendant in Switzerland, and in 1996 approximately four months between May and August. In September 1996, Rudy started kindergarten at St. Rose Grammar School in Belmar. However, when plaintiff experienced a housing problem,[1] plaintiff asked defendant if he would like Rudy to finish out the kindergarten year in Switzerland, and defendant agreed. Although the unrepresented plaintiff believed that she and defendant had agreed that Rudy would be returned to her during the summer of 1997 so that he could attend first grade in New Jersey, on December 12, 1996, the parties entered into a consent order modifying their prior agreements, which stated differently.
That consent order specified that the PSA would "remain in full force and effect." However, while providing that the parties would continue to share legal custody, the consent order designated defendant the primary physical custodial parent effective January 1, 1997, "for an indefinite period of time, with both parties agreeing to make all future decisions concerning custody of their child based on his best interests." Plaintiff was granted visitation with Rudy in Switzerland during his school vacations, with defendant having agreed to pay for up to four airline tickets per year for plaintiff's travel.
According to plaintiff, the quoted terms were inserted for the following reasons:

*70 I therefore requested that a paragraph be included in the Consent Order which would allow Rudy to be returned to me prior to the summer of 1997 in the event that he expressed a desire to do so. Thus, my understanding with regard to the Consent Order was that, in the event that Rudy adjusted well, he would be returned to me during the summer of 1997 but that, in the event that he experienced anxiety or stress as a result of the move, he would be returned to me prior to that date.
Plaintiff offers a number of other explanations in support of her position that the agreement does not mean what it says, including the fact that she would have insisted on summer visitation with Rudy in New Jersey, just as defendant had summer visitation with Rudy in Switzerland.
Rudy left New Jersey for Switzerland on December 30, 1996. After Rudy arrived, plaintiff spoke to him on the telephone nearly every day. In early February 1997, Rudy expressed the desire to return to New Jersey. When plaintiff discussed Rudy's statement with defendant, defendant requested that Rudy be given more time to adjust, and the parties agreed that plaintiff would visit Rudy during his winter vacation. A series of visits ensued, and each time Rudy expressed a desire to return to New Jersey. Defendant disagreed and eventually told plaintiff that he had enrolled Rudy in the first grade at a Swiss school. This litigation followed.
On June 9, 1997, plaintiff filed a motion seeking the return of residential custody, reinstatement of the original visitation schedule between Rudy and defendant, and the reinstatement of child support. Defendant cross moved for security to be posted to guaranty Rudy's return to Switzerland at the end of his summer visit with plaintiff. The motion judge denied the motion and the cross motion on July 11, 1997 (the order was entered on August 6, 1997). However, he did grant plaintiff extended parenting time with Rudy in New Jersey from July 13 through August 31, 1997, though Rudy was to be returned to defendant in Switzerland by August 25, 1997. Moreover, the judge said that "[s]hould the plaintiff seek to change custody, the parties may obtain expert custody evaluation at their own expense."
After the hearing, and pursuant to the judge's suggestion, plaintiff's counsel contacted Michele Rabinowitz, a psychologist, for the purpose of performing a custody evaluation. Rabinowitz required the participation of both parents and Rudy. Defendant refused to participate. Therefore, Rabinowitz was able to evaluate only plaintiff and Rudy for the purpose of determining whether there were "psychological factors that might alter the Court's decision concerning Rudy's return to Switzerland with his father."
Then, on August 20, 1997, plaintiff filed an order to show cause requesting a stay of the earlier order requiring Rudy's return to Switzerland and an order (1) compelling defendant to submit to and pay his portion of the custody evaluation with Rabinowitz; (2) scheduling a plenary hearing to determine residential custody, visitation and child support; and (3) awarding other unspecified equitable relief. This time the judge ruled that Switzerland, not New Jersey, had "exclusive subject matter jurisdiction" over the custody issue under the Hague Convention, denied the motion for change in custody status for lack of jurisdiction, denied the request to have defendant submit to a child custody evaluation in New Jersey and ordered plaintiff to surrender custody of Rudy to defendant (the order was entered October 17, 1997).
Although it is not clear from the record, plaintiff's initial motion for the return of primary residential custody appears to have been based upon her understanding that Rudy would be returned to her during the summer of 1997. The motion was denied on the grounds that (1) the parties' agreement granted defendant primary residential custody "for an indefinite period of time;" (2) the judge did not know what was meant by the phrase "indefinite period of time;" (3) plaintiff had not made any allegations that defendant was abusing or neglecting Rudy; (4) it was not in Rudy's best interest to be "shuffled between the parents, not to mention between two distant countries;" and (5) it was in Rudy's best interest to remain in Switzerland "`for the time being'." However, *71 the judge stated that if plaintiff wanted to change custody, the parties could obtain an expert custody evaluation at their expense.
The jurisdiction issue was not raised until the second hearing. After plaintiff had attempted to procure a custody evaluation (which defendant's lack of cooperation prevented) and filed a motion (in the form of an order to show cause) seeking a stay of the prior order and a full evaluation and hearing, the judge stated: "The Court is left with the situation of dealing with a question that already has been dealt with. And that is the question of the return of Rudy to Switzerland. That matter was decided by this Court on an earlier date." Turning to the jurisdiction issue, the judge ruled that Switzerland was Rudy's home state and had subject matter jurisdiction over this dispute under the Hague Convention, because (1) Rudy had the right to live there since December 12, 1996, the date that the December 1996 consent order was filed; (2) Rudy had lived in Switzerland for a "significant portion" of six months or for "[s]ubstantially" six months; and (3) plaintiff failed to show that Switzerland could not fairly address the custody issues.
The jurisdiction issue is governed by the New Jersey Constitution, article VI, section 3, paragraph 2; N.J.S.A. 2A:34-23; and the Uniform Child Custody Jurisdiction Act, N.J.S.A. 2A:34-28 to -52 (UCCJA). The pertinent provision of the New Jersey Constitution establishes original jurisdiction in the Superior Court of New Jersey "in all causes." N.J. Const. art. VI, § 3, ¶ 2. N.J.S.A. 2A:34-23 authorizes the court to modify custody orders. Thus, New Jersey had, and continues to have, subject matter jurisdiction over this dispute, whereas the UCCJA controls the "`exercise'" of its jurisdiction. G.C. v. M.Y., 278 N.J.Super. 363, 371, 651 A.2d 110 (App.Div.1995) (quoting Neger v. Neger, 93 N.J. 15, 27-28, 459 A.2d 628 (1983)).
Here, the question of whether New Jersey had jurisdiction over the custody dispute was never considered. In light of the provisions of our constitution and N.J.S.A. 2A:34-23, the order of October 17, 1997 is erroneous as a matter of law. Kimmelman v. Henkels & McCoy, Inc., 108 N.J. 123, 136, 527 A.2d 1368 (1987). Because New Jersey had subject matter jurisdiction at the time plaintiff's motion was filed, and the New Jersey motion was the only proceeding concerning Rudy's custody that had been filed and was pending,[2] there was no reason why New Jersey should not have exercised subject matter jurisdiction over the dispute. N.J.S.A. 2A:34-34 (New Jersey court shall not exercise jurisdiction if proceeding pending in another court at time New Jersey action filed unless other action stayed and then not without taking certain steps). See also, G.C., supra, 278 N.J.Super. at 369, 651 A.2d 110 (rejecting father's contention that New Jersey lacked jurisdiction because New York had become children's home state under the UCCJA and noting that no action had been filed in New York or was pending there).
The jurisdictional provisions of the UCCJA apply to international custody disputes. Ivaldi, supra, 147 N.J. at 198, 685 A.2d 1319. N.J.S.A. 2A:34-31, which sets forth the prerequisites necessary to establish jurisdiction, provides in pertinent part:
a. The Superior Court of the State of New Jersey has jurisdiction to make a child custody determination by initial or modification decree if:
(1) This State (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within 6 months before commencement of the proceeding and the child is absent from this State because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this State; or
(2) It is in the best interest of the child that a court of this State assume jurisdiction because (1) the child and his parents, or the child and at least one contestant, *72 have a significant connection with this State, and (ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or
...
(4)(1) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this State is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.

[N.J.S.A.2A:34-31(a)(1)-(3), (4).]
Under the UCCJA, home state is defined as
the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least 6 consecutive months, and in the case of a child less than 6 months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the 6-month or other period....

[N.J.S.A. 2A:34-30(e).]
The term "state" includes foreign countries. Ivaldi, supra, 147 N.J. at 203, 685 A.2d 1319. The crux of the judge's jurisdiction ruling was that Switzerland "appears to have jurisdiction based upon the fact that the child has been there the requisite number of months." As part and parcel of this ruling, the judge determined that (1) Rudy had lived in Switzerland for "[s]ubstantially ... at least six months," and (2) the custody dispute was subject to the jurisdiction of Switzerland "under the Hague Convention."
We respectfully disagree with those determinations and find, instead, that New Jersey had the jurisdiction to decide the custody issues between the parties. The UCCJA defines "home state" as the state where the child "immediately preceding the time involved lived ... for at least 6 consecutive months." N.J.S.A. 2A:34-30(e) (emphasis added). The phrase "immediately preceding the time involved" is implicitly clarified by N.J.S.A. 2A:34-31(a)(1) to mean the "commencement of the proceeding." Thus, the state where Rudy lived for "at least 6 consecutive months" prior to the institution of this proceeding was his home state.
We have decided that a child's home state should be determined as of "the time of filing of the immediate application being considered by the court." L.F. v. G.W.F., 183 N.J.Super. 195, 203, 443 A.2d 751 (App.Div. 1982). Read literally, the date would have been the filing of the motion that resulted in this appeal. That motion is the order to show cause filed on August 20, 1997. However, given what transpired below, L.F., supra, should not be read so restrictively.
Plaintiff first sought jurisdiction under the UCCJA in June 1997 when she filed the motion for modification of the December 1996 agreement. That motion was denied without prejudice to her right to seek custody based upon a custody evaluation. Perhaps the better response would have been for the judge to have ordered the custody evaluation and reserve decision pending a hearing, but nevertheless that was not done. However, in reliance upon the denial of the motion without prejudice and the judge's suggestion that an evaluation be obtained, plaintiff attempted to do just that but fell short as a result of defendant's refusal to cooperate. Plaintiff immediately returned to court armed with the best she could do without defendant's cooperation and sought an emergency stay given Rudy's imminent departure. Due to the proximity in time and the interrelationship between the two motions, we conclude that the date on which the proceedings commenced is June 9, 1997.
Using that date, it is apparent that Switzerland was not Rudy's home state. The December 12, 1996, consent order provided that defendant would become the primary physical custodial parent "effective January 1, 1997." It is undisputed that Rudy left the United States for Switzerland on December 30, 1996, pursuant to the consent order. Therefore, as of June 9, 1997 when the motion for return of residential custody was filed, Rudy had lived in Switzerland for only a little more than five months. Additionally, *73 we are mindful that in Neger, supra, 93 N.J. at 30-31, 459 A.2d 628, the Court quoted from and cited with approval the California Supreme Court's declaration in Kumar v. Superior Court of Santa Clara County, 32 Cal.3d 689, 186 Cal.Rptr. 772, 652 P.2d 1003, 1009 (1982), that "`all petitions for modification must be addressed to the state which rendered the original decree if that state had and retains jurisdiction under the standards of the [UCCJA].'"
We also find that the Hague Convention, more formally known as the Hague Convention on the Civil Aspects of International Child Abduction, is inapplicable here. This case is not, and never was, based upon an abduction. Rudy is, and has been, with his father in Switzerland pursuant to the December 1996 consent order and the August 6, 1997, order denying plaintiff's motion for the return of residential custody. Thus, neither the Hague Convention nor the cases that interpret any of its provisions apply to the facts of this case. See Rozkowski v. Rozkowska, 274 N.J.Super. 620, 630-31, 644 A.2d 1150 (Ch.Div.1993)(Hague Convention provides mechanism to determine whether child was wrongfully removed to, or being illegally retained in, some other country).
Additionally, we conclude that New Jersey has significantly more connection with Rudy than does Switzerland. If a child has no home state, then the state where the child and his family have equal or stronger ties will have jurisdiction. E.E.B. v. D.A., 89 N.J. 595, 609, 446 A.2d 871 (1982), cert. denied sub nom., Angle v. Bowen, 459 U.S. 1210, 103 S.Ct. 1203, 75 L.Ed.2d 445, reh'g denied, 460 U.S. 1104, 103 S.Ct. 1806, 76 L.Ed.2d 369 (1983). Indeed, "[i]t is implicit in the UCCJA that a state does not automatically lose jurisdiction over custody when it is no longer the home state, if one parent remains resident in that state, the child has significant contact with the state, there is substantial relevant evidence available in the state, and it is in the child's best interest for that state to make the determination." Ganz v. Rust, 299 N.J.Super. 324, 333, 690 A.2d 1113 (App.Div.1997). This is because the UCCJA does not require "blind obedience" to home state jurisdiction. E.E.B., supra, 89 N.J. at 610, 446 A.2d 871. Thus, the "significant connection" test of jurisdiction, N.J.S.A. 2A:34-31(a)(2), may be resorted to even if another forum prevails under the home state analysis. Even under this test, which may be utilized as an alternative to the home state analysis, E.E.B., supra, 89 N.J. at 609, 446 A.2d 871, New Jersey would have prevailed.
The "significant connection" test is set forth as follows:
It is in the best interest of the child that a court of this State assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this State, and (ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships....

[N.J.S.A. 2A:34-31(a)(2).]
The "significant connection" test is met in this case. But for the order under review, Rudy would have been residing in Switzerland for only slightly more than five months. See e.g., Macek v. Friedman, 240 N.J.Super. 614, 617-18, 573 A.2d 996 (App. Div.1990) (fact that court permits parent to remove child from New Jersey does not affect New Jersey's jurisdiction when the decision allowing the parent to remove child is reversed). Rudy's only relatives in Switzerland are his father, stepmother and half sister. He has a close relationship with his mother, maternal grandfather, paternal grandparents, Uncle Bill, cousins Kim and Ryan, and his good friend Kyle, all of whom are in New Jersey, where Rudy had resided all his life up until the last day of 1996 (except, of course, for his visits to Switzerland). Clearly, then, the best interest of Rudy would require that jurisdiction be retained in New Jersey even if there were no home state or there were concurrent proceedings.
Furthermore, no consideration was accorded the parties' agreements of April 28, 1995 and December 12, 1995, which expressly provide that New Jersey would have jurisdiction over custody and visitation issues. We *74 conclude that their agreements are enforceable and should be given effect.
The April 28, 1995, consent order, which was entered into after defendant had relocated to Switzerland, specifically states: "Despite defendant's relocation to Zurich, Switzerland, any questions or disputes that may arise between the parties as to child support, custody and visitation shall remain subject to the jurisdiction of New Jersey." The first paragraph of the December 12, 1996, consent order, which transferred primary physical custody of Rudy from plaintiff to defendant for an undetermined amount of time, specifically states that, except for the terms set forth in the December 12 consent order, all terms and conditions of the April 28 order "shall continue in full force and effect." The December 12 consent order did not address jurisdiction. Therefore, the jurisdiction clause of the April 28 consent order remained in effect.
Although subject matter jurisdiction cannot be conferred by agreement where there is none, Neger, supra, 93 N.J. at 35, 459 A.2d 628; G.C., supra, 278 N.J.Super. at 371, 651 A.2d 110, such is not the case here. As discussed previously, New Jersey did have subject matter jurisdiction over the dispute under the constitution, N.J.S.A. 2A.34-23, and the UCCJA. In G.C., we "perceive[d] no public policy basis in the record to deny enforcement of the parties' agreement to retain New Jersey's jurisdiction." 278 N.J.Super. at 370-71, 651 A.2d 110. There we enforced the parties' forum selection clause in their custody agreement on the following grounds:
(1) the New Jersey Superior Court issued the initial custody decree as part of the divorce judgment; (2) the children resided in New Jersey with their mother and New Jersey was their home state at the time of the divorce and when the amendment was executed; (3) the period of residential custody with the father in New York was a trial period subject to further agreement or court decree; and (4) the mother continues to reside in New Jersey.

[Id. at 370, 651 A.2d 110.]
In enforcing the agreement, we observed that the UCCJA rejects "`a rigid rule vesting jurisdiction automatically in the home state and favors instead, a more flexible approach.'" Ibid. (quoting E.E.B., supra, 89 N.J. at 610, 446 A.2d 871). Moreover, it was also noted that the father's "post-ruling forum shopping" would defeat the UCCJA's statutory purpose, to wit: defining and stabilizing the right to custody in the best interest of the child. Ibid. Finally, public policy did not prohibit enforcement of the agreement because the UCCJA "provides that the parties' agreement on `another forum which is no less appropriate' is a factor in determining whether a court should decline to exercise its jurisdiction." Id. at 370-71, 651 A.2d 110 (quoting N.J.S.A. 2A:34-35(c)(4)).
In response to the father's argument that an agreement cannot impose subject matter jurisdiction where there is none, it was noted that New Jersey has jurisdiction virtually as a matter of course over custody disputes. Id. at 371, 651 A.2d 110 (citing N.J. Const. art. VI, § 3, ¶ 2; N.J.S.A. 2A:34-23; N.J.S.A. 9:2-1 and -3). Thus, "an agreement to retain jurisdiction in New Jersey does not impose subject matter jurisdiction on New Jersey courts." Ibid.
Finally, G.C. held that New Jersey had subject matter jurisdiction over the dispute pursuant to the "significant connection" analysis set forth in N.J.S.A. 2A:34-31(a)(2) because, among other things, a New Jersey court issued the initial custody decree, and New Jersey maintained a significant connection with one parent and the children "as a result of the joint custody arrangement contained in the divorce judgment and continued in the amendment." Id. at 371-72, 651 A.2d 110.
There is no reason why G.C. should not control the outcome of this case. As in G.C., (1) a New Jersey court issued the initial custody decree in the divorce judgment; (2) Rudy resided in New Jersey with plaintiff, and "New Jersey was their home state at the time of the divorce judgment and its subsequent amendments"; (3) the agreement stated that Rudy's stay with defendant was for an indefinite period, not permanent; and (4) plaintiff continues to reside in New Jersey. G.C., supra, 278 N.J.Super. at 370, 651 A.2d *75 110. Moreover, most of Rudy's relations, friends, and personal history were in New Jersey. N.J.S.A. 2A:34-31(a)(2).
We conclude that as a matter of law New Jersey has proper jurisdiction, and that jurisdiction has not been obliterated by Rudy's court-ordered presence in Switzerland since August 1997. The matter is remanded to the Family Part for further consideration of the merits of the August 1997 order to show cause. We do not retain jurisdiction.
NOTES
[1] She had listed her condominium for sale, but it sold so quickly that she was not able to obtain substitute housing before the closing.
[2] Plaintiff contends New Jersey should exercise jurisdiction under the doctrine of forum non conveniens. That doctrine is inapplicable because no other action is pending. See Ivaldi v. Ivaldi, 147 N.J. 190, 204, 685 A.2d 1319 (1996).