771 A.2d 701 (2001)
339 N.J. Super. 326
Andrew Delaney HENDRY, Plaintiff-Respondent,
v.
Jean Sharon HENDRY, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted April 4, 2001.
Decided April 23, 2001.
*703 Schachter, Trombadore, Offen, Stanton & Pavics, Somerville, attorneys for appellant (Michael J. Stanton, on the brief).
Budd, Larner, Gross, Rosenbaum, Greenberg & Sade, Atlantic City, attorneys for respondent (Susan Reach Winters, of counsel; Ms. Winters, Thomas D. Baldwin, and Richard E. Kummer, on the brief).
Before Judges KING, COBURN and LEFELT.
*702 The opinion of the court was delivered by LEFELT, J.A.D.
Plaintiff Andrew Hendry and defendant Jean Hendry were married on June 17, 1970. The parties adopted one child at birth, Robert Andrew Hendry ("Robbie"), who is eleven years old. On June 10, 1997, Andrew and Jean were divorced by dual judgment, and on March 12, 1998, the parties incorporated a property settlement agreement into their divorce judgment. The parties negotiated, as part of the settlement agreement, a provision continuing jurisdiction in New Jersey for all matters relating to their child. Jean and Robbie currently live in North Carolina and Andrew has moved to New York. Jean in this appeal contends that Judge Herr violated the Uniform Child Custody Jurisdiction Act, N.J.S.A. 2A:34-28 to -52 ("UCCJA"), by enforcing the negotiated continuing jurisdiction provision. We disagree with Jean's contention and affirm.

I.
Jean and Andrew lived in New Jersey together from 1976 through 1980 and from 1991, when Robbie was adopted at birth, until June 1998, when Jean moved with Robbie to North Carolina. As part of their divorce proceeding, Andrew and Jean negotiated a detailed consent-to-jurisdiction provision for inclusion in the parties' property settlement. The parties recognized that Jean wanted to relocate to North Carolina with Robbie. Jean wished to move to North Carolina for its milder climate and more affordable lifestyle. She had no job and no family in North Carolina, but hoped to establish a horse farm. In consideration for Andrew's consent to Jean's move with Robbie, the parties agreed, as follows, that New Jersey shall "irrevocably" retain jurisdiction over any subsequent dispute they may have relating to their former marriage:

Jurisdiction. The parties agree to submit any dispute concerning their son to Judith Grief for mediation. In the event Judith Grief is not available for such mediation, the parties shall attempt to agree to a similarly qualified mental health professional and, if they cannot agree, the court shall appoint a mediator of its choice. In the event said mediation does not resolve the dispute, or in the case any dispute arises between the parties with regard to any financial issues, each of the parties hereby irrevocably consents and submits to the jurisdiction of the courts of the State of New Jersey in connection with any suit, action or other proceeding arising out of or relating to the child, this Agreement or the transactions contemplated hereby, *704 waives any objection to venue in the County of Hunterdon, and agrees that service of any summons, complaint, notice or other process relating to such suit, action or other proceeding may be upon Gary Newman, Esquire for Wife and Susan Reach Winters, Esquire for Husband, regardless of where each party resides at the time said dispute arises, and regardless of any law to the contrary.
Besides negotiating this consent-to-jurisdiction provision, the parties also agreed on timesharing and co-parenting arrangements and shortly thereafter entered into a consent order that incorporated the co-parenting guidelines into the settlement agreement and divorce judgment. A little over one month after the parties agreed to the consent order, Jean and Robbie relocated to North Carolina. Sometime thereafter, Andrew also moved from New Jersey and currently resides and works in New York City, though he also has a second home in North Carolina about five miles from Jean's home.
A little over one year after Jean and Robbie moved to North Carolina, Jean on July 16, 1999, filed a motion seeking to have North Carolina assume jurisdiction under the UCCJA to modify visitation. Andrew countered on September 1, 1999 by filing a motion to enforce litigant's rights in Hunterdon County, New Jersey seeking primary residential custody of Robbie and setting a timesharing schedule for Jean. After the North Carolina judge consulted with Judge Herr and was advised of the parties detailed consent-to-jurisdiction agreement, the judge declined jurisdiction.
Jean then filed a cross-motion in Andrew's New Jersey action, requesting that under the UCCJA New Jersey decline jurisdiction over the custody and parenting issues in favor of North Carolina. Jean claims that the parties' agreement, in essence, abrogates the UCCJA and New Jersey should not be permitted to retain jurisdiction permanently because neither party nor the child has any connection with New Jersey. Judge Herr rejected (a) Jean's cross-motion to relinquish jurisdiction to North Carolina, (b) Andrew's motion for primary physical custody, and (c) both parties' applications for attorney fees. Only Jean appealed from these determinations to contest New Jersey's refusal to recognize North Carolina's jurisdiction over this dispute.

II.
The UCCJA indicates that "New Jersey has jurisdiction to make a child custody determination ... if: (1) This State (i) is the home state of the child at the time of commencement of the proceeding...." N.J.S.A. 2A:34-31a(1). Generally, to be the "home state," the statute requires that the child reside in that state for "6 consecutive months" before the custody suit began. N.J.S.A. 2A:30-30e. There are also other UCCJA provisions authorizing this State to determine child custody disputes, which do not require "home state" status. For purposes of this appeal, however, we note merely that neither party contends that New Jersey derives jurisdiction in this matter either as the "home state" or under any of the other UCCJA jurisdiction authorizing provisions. N.J.S.A. 2A:34-31a, b. In fact, Jean's position is that North Carolina is clearly the "home state" and the only state that ought to determine this dispute. We reject this position.
The UCCJA was enacted in part to "[a]ssure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his *705 care, protection, training and personal relationships is most readily available...." N.J.S.A. 2A:34-29a, c; Ivaldi v. Ivaldi, 147 N.J. 190, 198, 685 A.2d 1319 (1996); Neger v. Neger, 93 N.J. 15, 25-26, 459 A.2d 628 (1983). An argument can be made that in this case, where none of the parties currently reside in New Jersey, this State no longer meets this test.
However, The UCCJA was also enacted to "[a]void jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in shifting of children from state to state with harmful effects on their well-being." The Legislature also found that the UCCJA was necessary to "[p]romote cooperation with the courts of other states[,] ... [d]iscourage continuing controversies over child custody[, and to]... [p]romote and expand the exchange of information and other forms of mutual assistance between the courts of this State and those of other states concerned with the same child." N.J.S.A. 2A:34-29a, b, d and h. All of these goals were fostered by New Jersey's action in this case. Indeed, the UCCJA specifically authorizes judges from competing states to communicate with each other to determine the most appropriate forum. N.J.S.A. 2A:34-35(d). Thus, when the North Carolina and New Jersey judges communicated and coordinated, the judges acted strictly in accordance with the UCCJA.
In addition, the UCCJA "does not contemplate blind obedience to home state jurisdiction ... [and] rejects a rigid rule vesting jurisdiction automatically in the home state and favors, instead, a more flexible approach." E.E.B. v. D.A., 89 N.J. 595, 610, 446 A.2d 871 (1982), cert. denied sub nom., Angle v. Bowen, 459 U.S. 1210, 103 S.Ct. 1203, 75 L.Ed.2d 445, reh'g denied, 460 U.S. 1104, 103 S.Ct. 1806, 76 L.Ed.2d 369 (1983). "The state to decide a child custody dispute is not necessarily the home state, but the one best positioned to make the decision based upon the best interest of the child." Ibid. The "home state jurisdiction conclusion ... is not necessarily controlling under the UCCJA for a court's exercise of custody jurisdiction." M.P.H.M. v. K.S.M., 324 N.J.Super. 51, 56, 734 A.2d 342 (App.Div.1999). A determination of home state does "not necessarily resolve the jurisdictional conflict." Ivaldi, supra, 147 N.J. at 204, 685 A.2d 1319. A court may decline to exercise jurisdiction if the court finds "that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum." N.J.S.A. 2A:34-35.
In this case, the parties' marital home was located in New Jersey, Robbie resided in New Jersey for almost seven years and has lived in North Carolina for less than three years, Robbie's counselor and mediator are located in New Jersey, and New Jersey issued the initial custody decree as part of the divorce judgment. Thus, New Jersey, while arguably under the UCCJA is not the state with the closest connection to this current dispute, has sufficient contacts to exercise jurisdiction and is not an inappropriate forum. It is our conclusion, as it was Judge Herr's and the North Carolina judge's, that when the circumstances surrounding its development and the language of the parties' consent-to-jurisdiction agreement is considered, New Jersey becomes a more appropriate forum than North Carolina, at this time, to litigate this case.
We cannot lose sight of the fact that just a short while ago, Jean and Andrew agreed that New Jersey would be the forum to resolve all of their subsequent disputes. "This State has a strong public policy favoring enforcement of agreements. Marital agreements are essentially *706 consensual and voluntary and as a result, they are approached with a predisposition in favor of their validity and enforceability." Massar v. Massar, 279 N.J.Super. 89, 93, 652 A.2d 219 (App.Div. 1995). We will enforce agreements made between divorcing spouses that are entered into freely and voluntarily. See e.g., Konzelman v. Konzelman, 158 N.J. 185, 193, 729 A.2d 7 (1999).
Forum selection clauses will be enforced unless the objecting party demonstrates fraud or unequal bargaining power. McNeill v. Zoref, 297 N.J.Super. 213, 219, 687 A.2d 1052 (App.Div.1997); Shelter Systems Group Corp. v. Lanni Builders, Inc., 263 N.J.Super. 373, 375, 622 A.2d 1345 (App.Div.1993); Wilfred MacDonald, Inc. v. Cushman, Inc., 256 N.J.Super. 58, 63-64, 606 A.2d 407 (App. Div.), certif. denied, 130 N.J. 17, 611 A.2d 655 (1992). Here, there is no allegation that the jurisdiction agreement was involuntary, coerced, or the product of fraud, undue influence, or unequal bargaining power. Danka Funding, L.L.C. v. Page, Scrantom, Sprouse, Tucker & Ford, P.C., 21 F.Supp.2d 465, 470 (D.N.J.1998). Moreover, similar agreements have been previously enforced. See Bless v. Bless, 318 N.J.Super. 90, 103, 723 A.2d 67 (App. Div.1998) (post-divorce consent order providing New Jersey with jurisdiction over child custody and visitation issues was enforceable); G.C. v. M.Y., 278 N.J.Super. 363, 367, 370, 651 A.2d 110 (App.Div.1995)(agreement providing New Jersey with jurisdiction over disagreements regarding where the children will primarily reside was enforceable).
The difference between Bless and G.C. and this case is, however, that here no party currently lives in New Jersey. Nevertheless, we conclude, as did Judge Herr and the North Carolina judge, that the parties' agreement should be enforced, at this time. Judge Herr noted that in less than three years, Jean was "maneuvering to undo her own agreement. The exceptionally strong and specific [agreement] language ... emphasized ... in the Consent Order can only be viewed as a negotiated quid pro quo for the consent of [Andrew] to allow [Jean] to remove the child so far away from [Andrew's] place of employment."
While litigation may be more costly and more inconvenient for Jean in New Jersey than in North Carolina, New Jersey is not so inconvenient and inappropriate a forum that Jean should be allowed to undo the agreement. Inconvenience or additional expense should not invalidate a forum-selection clause. Danka Funding, L.L.C., supra, 21 F.Supp.2d at 472. After all, when the clause was negotiated, the parties most certainly considered the inconvenience and extra expense that could be generated by such a clause. The parties nevertheless agreed.
While it is true that subject matter jurisdiction can not be conferred by agreement between the parties, see Peper v. Princeton University Bd. of Trustees, 77 N.J. 55, 65-67, 389 A.2d 465 (1978), New Jersey has subject matter jurisdiction over this dispute through sources other than the UCCJA. N.J. Const. art. VI, § 3, ¶ 2; N.J.S.A. 2A:34-23; N.J.S.A. 9:2-1 and -3. Therefore, the parties' consent-to-jurisdiction agreement did not impose subject matter jurisdiction on our courts. G.C. v. M.Y., supra, 278 N.J.Super. at 371, 651 A.2d 110.
We agree with Judge Herr who noted that "[w]ere [Jean] to succeed in avoiding her obligation to bring disputes to this court, no parent would ever again feel comfortable in granting permission for a child to leave the state on the basis that the sending state retain jurisdiction as *707 [Andrew] did herein." Moreover, Andrew, in good faith, relied on the agreement and did not challenge Jean's right to relocate to North Carolina. Consequently, Jean is also estopped from rejecting the jurisdiction provision. Heuer v. Heuer, 152 N.J. 226, 237, 704 A.2d 913 (1998). "An estoppel does not require that any fraudulent intent be shown. `If the conduct works an unjust or inequitable result to the person it was designed to influence, the doctrine is applicable.'" Chrisomalis v. Chrisomalis, 260 N.J.Super. 50, 55, 615 A.2d 266 (App. Div.1992), (quoting Widmer v. Township of Mahwah, 151 N.J.Super. 79, 85, 376 A.2d 567 (App.Div.1977)).
Absent any misconduct on behalf of Andrew and especially considering the relatively short period between the agreement and Jean's attempt to shift jurisdiction to North Carolina, we will, at this time, enforce this State's strong public policy favoring settlements over a strict interpretation of the UCCJA "home state" determination.
We specifically do not rule on the longevity of the "irrevocability" of the consent-to-jurisdiction agreement. We merely note the relatively short period that has transpired since the parties left New Jersey and recognize that neither party has raised sufficient changed circumstances to call into question the clause's current viability.
Affirmed.