79 A.3d 1045

A.W., PLAINTIFF v. T.D., DEFENDANT.

Superior Court of New Jersey
Chancery Division Ocean County
Family Part

Decided May 30, 2013.

*Jonathan Petro* for defendant (*Carluccio, Leone, Dimon, Doyle & Sacks,* attorneys).

L.R. JONES, J.S.C.

This case presents a serious issue of first impression regarding the impact a terminal cancer diagnosis may have on an existing custody arrangement. Plaintiff-father, who is the non-custodial parent, seeks an order granting emergency transfer of residential custody of the parties' three minor children from defendant-mother, on the grounds that she now has incurable stage IV breast cancer requiring various medical interventions. Defendant objects to plaintiff's application, and requests to retain custody of the children at this time.

For the reasons set forth in this opinion, the court denies plaintiff's application, and directs that defendant shall remain the children's primary caretaker unless and until further order of the court, or as otherwise agreed by the parties in the future.

## FACTUAL BACKGROUND

Plaintiff and defendant divorced in 2002. They have three children, who are presently between twelve and fourteen years of

age. The parties share joint legal custody, with defendant serving as the children's primary residential custodian and caretaker. She and the children live approximately three and a half hours' driving distance from plaintiff, but only minutes away from several maternal relatives, including the children's grandparents, aunt, uncle, and cousins.

Defendant is presently forty-six years old. She has recently been diagnosed with incurable, terminal, metastatic Stage IV breast cancer, for which she was hospitalized and then discharged. Plaintiff asserts that given defendant's medical condition, a transfer of custody is in the children's best interests.

Defendant opposes plaintiff's position. She acknowledges her diagnosis, as well as her understanding that, at some point in the future, her condition may deteriorate to the point where she can no longer physically care for the children. She further notes that under the circumstances, a transfer of custody to plaintiff may ultimately be inevitable and necessary. However, defendant also contends that such a transfer of custody is premature at this time, and that at least presently, she is still able to care for the children. She stresses that her multiple family members who live nearby can all help provide her with physical, financial, and emotional assistance as necessary.[1]

Defendant's two treating physicians, Dr. Paul Fowler and Dr. Charles Padgett, both confirm that defendant's cancer is, in fact, incurable and terminal. However, each doctor further opines that defendant is presently stable and fully functional. They advise that while defendant takes prescribed medication for her condition, her judgment is unimpaired. Most significantly, each physician concludes that that defendant is able to continue caring for the children at this time.

---

[1] Many of defendant's relatives appeared in court and credibly testified as to their readiness and willingness to assist defendant with the children on an as-needed basis.

## LEGAL ANALYSIS

This matter involves two of the most fundamentally significant challenges any young child can ever face, with contested custody and a parent's terminal illness rolled together into one intertwined dispute. After carefully considering this emergent application, the court holds that plaintiff has failed to demonstrate that a transfer of custody from defendant is in the children's best interests at this time. *See Crowe v. De Gioia*, 90 *N.J.* 126, 447 *A.*2d 173 (1982) (applicant for emergent relief must show evidence of immediate and irreparable injury of a significant nature).

Pursuant to *N.J.R.E.* 201(b), the court may take judicial notice of matters of generalized knowledge. Common experience teaches us that there are many people who, notwithstanding serious illness, injury, disability, or condition, are still motivated and capable individuals, and are outstanding custodial parents as well. In fact, some otherwise infirm or disabled parents possess parenting skills and abilities that far surpass those of many physically healthy counterparts.

It would be fundamentally inequitable and inappropriate for this court to conclude that a person's illness, disability, or condition, even a condition as serious as Stage IV cancer, automatically renders a person unfit per se to continue serving as a custodial parent. To the contrary, from a logical standpoint, a decision to transfer custody away from a custodial parent cannot fairly or properly rest solely upon an illness, disability, or bodily condition. Rather, there needs to be sufficient evidence, beyond the condition itself, which supports a conclusion that the condition or disability substantially prevents the custodial parent from continuing to satisfactorily function as a primary caretaker for his or her children, and that a transfer of custody is presently necessary to protect the children's best interests. In this case, plaintiff has failed to produce such evidence.

It is true that, in certain cases, the facts and evidence may reflect that, due to illness or injury, a custodial parent may no

longer be able to appropriately care for a child's health, safety, and welfare. In New Jersey, the law is clear that, in such factual circumstances, the court in its discretion may conclude that in order to protect a child's best interests, a transfer of residential custody to another parent or caretaker may be necessary, no matter how morally blameless the custodial parent may be. *See N.J. Div. of Youth and Family Servs.*, 344 *N.J.Super.* 418, 782 *A.*2d 458 (App.Div.2001). The reasoning behind this principle is that a child's welfare is generally superior to the rights of either parent. *Id.* at 441, 782 *A.*2d 458. *See also Quinn v. Johnson*, 247 *N.J.Super.* 572, 580, 589 *A.*2d 1077 (Ch.Div.1991). When presented with a choice between parents' rights and children's rights, the choice generally must be to support the children's welfare and best interests. *In re J.R. Guardianship*, 174 *N.J.Super.* 211, 224, 416 *A.*2d 62 (App.Div.1980). *In re Matter of Baby M*, 217 *N.J.Super.* 313, 323, 525 *A.*2d 1128 (Ch.Div.1987), *rev'd on other grounds*, 109 *N.J.* 396, 537 *A.*2d 1227 (1988); *see also Kelly v. Kelly*, 217 *N.J.Super.* 147, 157, 524 *A.*2d 1330 (Ch.Div.1986) (constitutional rights of parent may in some cases be subject to the best interests of children).

It is equally true, however, that cases must ultimately be decided on facts. *Bendix Corp. v. Dir., Div. of Taxation*, 125 *N.J.* 20, 41, 592 *A.*2d 536 (1991); *McKinley v. Naters*, 419 *N.J.Super.* 205, 211, 16 *A.*3d 479 (Ch.Div.2011). Our law is not to be applied in the abstract, but must be considered in light of the factual circumstances in an individual case. *Hanover Ins. Co. v. Franke*, 75 *N.J.Super.* 68, 74, 182 *A.*2d 164 (App.Div.), *certif. denied*, 38 *N.J.* 308, 184 *A.*2d 421 (1962). Depending on such facts, an adjustment of the rights of the parties may vary from one case to another. *Vasquez v. Glassboro Serv. Ass'n*, 83 *N.J.* 86, 108, 415 *A.*2d 1156 (1980). This is particularly true in a court of equity, where a family court may give full range to equitable doctrines in dealing with matrimonial controversies. *See Kazin v. Kazin*, 81 *N.J.* 85, 94, 405 *A.*2d 360 (1979). Indeed, equity never permits a rigid principle of law to smother the factual realities to which it is sought to be applied. *Am. Ass'n of Univ. Profs. v. Bloomfield*

*Coll.*, 129 *N.J.Super.* 249, 274, 322 *A.*2d 846 (Ch.Div.1974), *aff'd*, 136 *N.J.Super.* 442, 346 *A.*2d 615 (App.Div.1975).

■ In the present case, the facts and evidence reflect that while defendant's illness may render her unable to care for the children in the future, she presently is able to continue in her capacity as primary custodian. Two separate physicians confirm same. The court expressly notes that, in this proceeding, defendant traveled a great distance to appear in court and testify in opposition to plaintiff's emergency custody application. Notwithstanding her diagnosis and prognosis, she voluntarily took the stand and presented as an extremely sound-minded, intelligent, and articulate witness and parent. Under highly challenging circumstances, she very impressively responded to plaintiff's cross-examination questions, and had rapid and appropriate answers to virtually all of his inquiries.

Moreover, in denying plaintiff's request for an involuntary transfer of custody, there is another relevant and critical point in the analysis. Not only has plaintiff provided insufficient evidence that the children are presently facing immediate and irreparable harm, but the exact opposite may be true. Specifically the parties' young children may potentially face immediate and irreparable harm if the court *does* transfer residential custody away from defendant at this time. The harm at issue is not *physical* harm, but *emotional* harm resulting from a forcible, premature separation of the children from their dying mother and primary caretaker.

■ New Jersey's custody statute, *N.J.S.A.* 9:2–4, expressly directs courts to consider the needs of the children. In a custody analysis, a child's needs involve far more than mere physical needs such as food and shelter. Rather, judicial consideration of a child's needs must logically extend to emotional needs as well. Indeed, the New Jersey Supreme Court has recognized that a child's parent and/or primary caretaker may be an essential focus of a child's life, and a source of fulfillment of not only the child's physical needs, but also his or her emotional and psychological

needs and well-being. *See V.C. v. M.J.B.,* 163 *N.J.* 200, 223, 748 *A.*2d 539 (2000), citing *Carter v. Brodrick,* 644 *P.*2d 850 (Alaska 1982). Accordingly, in a custody analysis, a court must give due regard for the issue of whether separation of a child from a primary caretaker may cause serious and enduring emotional or psychological harm. *See In re Guardianship of J.C.,* 129 *N.J.* 1, 19, 608 *A.*2d 1312 (1992). *See also Fantony v. Fantony,* 21 *N.J.* 525, 536, 122 *A.*2d 593 (1956) (paramount consideration of the courts is for the safety, happiness, physical, mental and moral welfare of the child).

■ A non-custodial parent who is seeking to change the child's custodial status quo has the burden of proving by a preponderance of the credible evidence that the potential for serious psychological harm accompanying or resulting from such a move will not become a reality. *See M.P. v. S.P.,* 169 *N.J.Super.* 425, 431–32, 404 *A.*2d 1256 (App.Div.1979). Judicial consideration of a child's emotional needs is especially critical in a custody case such as the present one, where three young children are facing the possible premature death of their mother. One does not need to be a trained psychiatrist or psychologist to recognize the potentially enormous significance of this issue. Pursuant to *N.J.R.E.* 201(b), this court takes judicial notice that pending death and loss of a parent can be one of the most emotionally traumatic and devastating events in a young child's life, and potentially even more destabilizing when the dying parent has been the child's primary caretaker.

In this case, the parties' children may have a tremendous emotional need to remain with defendant, and to spend as much time with her as reasonably possible under the circumstances. For the children, the loss of this opportunity during what may be the final stages of defendant's life may be irreplaceable, and the resulting emotional damage irreparable. The fact that the parties are divorced, and live relatively far apart, only further complicates matters for the children.

■ When a non-custodial parent files an application alleging a necessity to immediately transfer custody away from parent with a

terminal illness, such application must at the very least logically acknowledge and address the critical questions of whether such immediate transfer of custody may cause the children serious and irreparable emotional trauma, and how the non-custodial parent specifically proposes to handle such trauma under the circumstances. Failure to address these issues leaves a gaping hole in the application, and may reflect poorly on the non-custodial parent's ability to fully grasp and understand the gravity of the situation which young children may face when their primary caretaker is dying. In this case, notwithstanding the clear need for careful exploration and consideration of the children's emotional needs at this time, defendant's emergent custody application fails to satisfactorily reflect any real and thoughtful discussion or acknowledgment of this issue in any meaningful way.

Still further, plaintiff's application for transfer of custody does not include any proposed, specific, acceptable plan for how and when he would provide the children with substantial continuing access to their mother if hypothetically he were awarded custody.[2] Even when an emergency transfer of custody is truly necessary due to a custodial parent's medical situation, the non-custodial parent still has a basic obligation to present, in his or her court application, a specific and reasonable schedule for providing the children with substantial ongoing access to, and contact with, their infirm parent. Such continuing access is a critical part of recognizing and tending to the children's emotional needs in a time of transition and crisis.

More specifically, plaintiff has provided no evidence that, following his learning of defendant's terminal diagnosis, he ever attempted to schedule any type of meeting or discussion with defendant, as joint legal custodians, to initiate cooperative planning for a possible future transition of custody. Such planning

---

[2] At the hearing, and after questioning, plaintiff ultimately proposed a schedule for the children to have access to defendant, which the court found to be insufficient and inappropriate under the circumstances.

may have logically included jointly meeting with a child psychologist, therapist, or other professional to obtain appropriate professional counseling, therapy, education, and guidance on how to best assist the children in coping with the present situation.

Notwithstanding the parties' present positions as legal adversaries, they still remain, more importantly, joint parents and joint legal custodians. In fulfilling their roles and responsibilities to their children, it would certainly have been logical and appropriate for both parties to jointly cooperate on the traumatic issues before them, and to engage such a professional for the benefit of the children, as well as themselves, to gradually prepare the children for a potential future transition of custody if and when medically necessary. Understandably, defendant has a great deal of other issues to contend with at the present time, but there was nothing stopping plaintiff from attempting to initiate such a dialogue with defendant before she was hospitalized and before instituting court proceedings. Unfortunately, the words "counseling", and/or "therapy" appear nowhere in plaintiff's custody application.

Since plaintiff is seeking to modify the existing custody arrangement, he carries the burden of proof to demonstrate that there has been a substantial change of circumstances affecting the welfare of the children, and that a transfer of custody is in their best interests. *See Sheehan v. Sheehan,* 51 *N.J.Super.* 276, 287–88, 143 *A.*2d 874 (App.Div.), *certif. denied,* 28 *N.J.* 40, 46, 145 *A.*2d 1 (1958). For the foregoing reasons, plaintiff fails to meet this burden, and the court denies his application. As per defendant's request, the court orders that the children will continue to remain in defendant's residential custody, subject to plaintiff's right to continued parenting time as directed by the court.

In denying plaintiff's custody application, the court does not ignore defendant's affliction and prognosis, and the possibility that, at some point in the near future, she may no longer be medically able to continue caring care for the children. Defendant expressly acknowledges this point, as well as the fact that a transfer of the children to plaintiff's residential custody and care

may ultimately be inevitable either before or after death. *See Watkins v. Nelson,* 163 *N.J.* 235, 237, 244, 748 *A.*2d 558 (2000) (rebuttable presumption generally exists in favor of surviving biological parent's right to custody of children). The severity of stage IV metastatic cancer is such that a transfer of custody may potentially be necessary in the future. Whether such circumstance arises years, months, or weeks from now is speculative, and there is of course always the hope of remission. Nonetheless, given defendant's diagnosis, it is appropriate for the parties, as joint legal custodians and parents, to attempt to constructively communicate with each other, and jointly and responsibly prepare and develop a mutually acceptable contingency plan for implementation of a possible future transfer of custody, if and when medically necessary.

Pursuant to *N.J.S.A.* 9:2–4, the parties as joint legal custodians have an ongoing obligation to attempt to communicate and cooperate with each other on important child-related issues, consistent with the children's best interests. Such efforts may obviate the need for future volatile custody litigation, which is a worthwhile goal since custody litigation may itself wreak emotional havoc with a child. *See Mackowski v. Mackowski,* 317 *N.J.Super.* 8, 14, 721 *A.*2d 12 (App.Div.1998).

In this case, the children's interests can be positively served if both parents jointly and consensually select a child psychologist or therapist who can provide them with important professional guidance on jointly helping the children through this ordeal. In this fashion, if and when a transfer of custody becomes medically necessary, such transfer may take place under amicable terms, which have been cooperatively constructed and consensually arranged by two caring parents in advance of a medical emergency. The terms of such arrangement can be reduced to a proposed consent order submitted to the court. Of course, any such joint arrangements should logically contain provisions for the children to have ongoing counseling, and should further include as many reasonable opportunities as medically possible for the children to

maximize their remaining time with their mother under the circumstances.

The court notes that under prior arrangement established well before this emergent application, plaintiff was going to have the full summer of 2013 with the children. While he will still be entitled to part of summer vacation, under the circumstances the court will modify the summer schedule so that the children can spend additional intervening stretches of time with defendant as well. Additionally, the court will interview the children at the end of the summer regarding their access to their mother as well as their general well-being.

Finally, the court directs that if defendant's medical condition materially worsens, then either defendant or a designated relative on her behalf shall immediately advise plaintiff of same. Defendant's father has confirmed in court, with defendant's consent, that he is willing to communicate such information to plaintiff if defendant is unable to do so on her own. The children's best interests require that plaintiff be kept fully advised of any significant developments and changes in circumstances, so that plaintiff is as prepared as possible if future developments require him to assume residential custody of the children on relatively short notice.