DANIEL E. FRIEDMAN, PETITIONER, v. THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK; AND THE HONORABLE T. ARTHUR RITCHIE, JR., DISTRICT JUDGE, FAMILY COURT DIVISION, RESPONDENTS, AND KEVYN Q. FRIEDMAN, REAL PARTY IN INTEREST.

No. 57245

November 23, 2011                    264 P.3d 1161

*Willick Law Group* and *Marshal S. Willick*, Las Vegas, for Petitioner.

*Jolley Urga Wirth Woodbury & Standish* and *Thomas J. Standish* and *Jennifer Poynter-Willis*, Las Vegas, for Real Party in Interest.

Before the Court EN BANC.

## OPINION

By the Court, PICKERING, J.:

This interstate child custody dispute traces back to a stipulated Nevada divorce decree. The decree incorporated the parents' agreement that Nevada would have exclusive jurisdiction over future child custody disputes. When such a dispute arose, the mother returned to the Nevada decree court to resolve it. By then, both parents and their children had moved to California. With everyone gone from Nevada, the father maintains that Nevada lacks subject matter jurisdiction. He has initiated competing custody proceedings in California.

The question presented is whether the Nevada district court can proceed or should defer to California. The answer lies in the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), which Nevada and California have both adopted. Under the UCCJEA, California appears to have jurisdiction as the children's "home state," and Nevada cannot proceed unless California determines that Nevada is the more convenient forum. If asked to make an inconvenient/more appropriate forum determination, the

California court could, under the UCCJEA, consider a number of factors, the parties' agreement to litigate in Nevada being one of them. But under the UCCJEA, the decision is California's. Because California has not declined jurisdiction, the Nevada district court erred in asserting it. We therefore grant writ relief.

I.

Daniel Friedman and Kevyn Wynn, formerly known as Kevyn Friedman, were divorced in Nevada in November 2008. They had three young children. The decree, which was stipulated, provided for joint legal custody. Addressing relocation and physical custody, the decree provided for Kevyn and the children to move from Nevada to Idaho and, perhaps eventually, California. While in Idaho, Kevyn was to have primary physical custody. However, per the agreement incorporated into the original decree, this would change to joint physical custody, with Kevyn and the children to move from Idaho to California, when and if Daniel obtained work in California.

All ran smoothly for a time. Daniel found work in California and moved there from Nevada; Kevyn and the children followed. However, the parents were not able to work out a schedule for joint physical custody. On August 12, 2010, almost two years after the original decree was entered, Kevyn applied to Nevada's district court for an order awarding her primary physical custody of the children. Daniel opposed Kevyn's motion and challenged the district court's jurisdiction to adjudicate the child custody dispute. On August 30, 2010, Daniel registered the original decree in California, seeking joint physical custody.

The Nevada district court rejected Daniel's challenge to its subject matter jurisdiction and, on September 1, 2010, provisionally granted Kevyn the primary physical custody order she sought.[1] A written order followed on November 9, 2010. The order found, among other things, that Daniel "moved from the State of Nevada no later than September 2009, but more likely in June or July 2009 [and that Kevyn] and the children have resided in the State of California at least from September 2009 forward. Therefore, the children and Mother and Father have not lived in Nevada since September 2009."

Under section 202(a)(2) of the UCCJEA (NRS 125A.315(1)(b), *reprinted infra* note 3), a court loses exclusive, continuing jurisdiction over a prior child custody determination on finding that "the child, the child's parents and any person acting as a parent do not presently reside in th[e] State." The district court recognized

---

[1]The order was based on an unsigned agreement prepared during a mediation in which the parents participated, attempting to resolve their child custody differences.

that, under the UCCJEA, its finding that Kevyn, Daniel, and the children had become California residents "would suggest that Nevada would lose jurisdiction." But the court deemed the parents' agreement to a Nevada forum controlling. In this regard, the original decree stated: "[T]he parties have agreed that the children's 'home state' shall always be considered to be Nevada, and jurisdiction over all issues pertaining to the custody of and each party's timeshare with the children shall be exclusively with . . . this Court (i.e., the Family Court in Clark County, Nevada)." The underlying settlement agreement amplified this provision: "Specifically, it is the parents' intent that no court other than this Court and the courts of the State of Nevada shall have jurisdiction over the parties or the subject matter to consider any issue pertaining to the custody and/or support of the parent[s'] minor children, including, but not necessarily limited to, any motion or action that may be filed by either parent seeking a change of custody [or] a change in the parent[s'] timeshare arrangement as set forth in this . . . Agreement."

In the district court's view, the parties' agreement to a Nevada forum trumped the UCCJEA. It therefore "reject[ed] the notion that it lacks subject matter jurisdiction . . . to resolve disputes arising out of custody." It further held that Daniel was judicially estopped to deny jurisdiction. The district court noted the pending California proceeding, but dismissed its significance, stating that "[t]he California Court can determine that it may request this Court to defer jurisdiction."

Daniel petitions this court for a writ of prohibition and/or mandamus, directing the Nevada district court to stand down from its assertion of jurisdiction in this case.

## II.

### A.

The National Conference of Commissioners on Uniform State Laws promulgated the UCCJEA in 1997 "to deal with the problems of competing jurisdictions entering conflicting interstate child custody orders, forum shopping, and the drawn out and complex child custody legal proceedings often encountered by parties where multiple states are involved." *In re Custody of A.C.*, 200 P.3d 689, 691 (Wash. 2009) (citing UCCJEA prefatory note, 9/1A U.L.A. 651; UCCJEA § 101 cmt., 9/2A U.L.A. at 657). The UCCJEA prescribes "uniform standards to be applied to determine whether a state has jurisdiction—initial or exclusive and continuing—over custody matters." *Sidell v. Sidell*, 18 A.3d 499, 505 (R.I. 2011). It " 'seek[s] a world in which there is but one order at a time for child . . . custody and visitation.' " *Id.* (quoting Model Unif. Interstate Family Support Act, comment to art. 6, § 611 (2008)); *see In re Marriage of Nurie*, 98 Cal. Rptr. 3d 200, 217 (Ct. App.

2009) (avoiding concurrent jurisdiction is a "major aim" of the UCCJEA).

Every state except Massachusetts has adopted the UCCJEA. 9/IA U.L.A. 113-14, Table of Jurisdictions Wherein Act Has Been Adopted (Supp. 2011).[2] Nevada did so in 2003, codifying the UCCJEA as NRS Chapter 125A. 2003 Nev. Stat., ch. 199, §§ 1-59, at 990-1004. Unless the jurisdictional facts are disputed—they are not in this case—subject matter jurisdiction under the UCCJEA involves questions of law, which receive de novo review. *Ogawa v. Ogawa*, 125 Nev. 660, 667-68, 221 P.3d 699, 704 (2009). Although de novo, our review properly includes decisions from other UCCJEA states so as to harmonize our law with theirs. *See* NRS 125A.605 ("In applying and construing the Uniform Child Custody Jurisdiction and Enforcement Act, consideration must be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it.").

B.

The UCCJEA forms the exclusive basis for determining jurisdiction of this interstate child custody dispute. NRS 125A.305(2); Cal. Fam. Code § 3421(b); *see In re Custody of A.C.*, 200 P.3d at 691. Nobody disputes that Nevada had jurisdiction under NRS 125A.305 to make the initial child custody determination when it entered the divorce decree. Ordinarily, this would give Nevada "exclusive, continuing jurisdiction" under NRS 125A.315.[3] However, NRS 125A.315(1)(b) provides that exclusive, continuing ju-

---

[2]Although not yet listed in the Table, Vermont adopted the UCCJEA in 2011. Vt. Stat. Ann. tit. 15, §§ 1061-1096 (2011).

[3]NRS 125A.315 reads in full as follows:

1. Except as otherwise provided in NRS 125A.335, a court of this state which has made a child custody determination consistent with NRS 125A.305 or 125A.325 has exclusive, continuing jurisdiction over the determination until:

(a) A court of this state determines that the child, the child's parents and any person acting as a parent do not have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training and personal relationships; or

(b) A court of this state or a court of another state determines that the child, the child's parents and any person acting as a parent do not presently reside in this state.

2. A court of this state which has made a child custody determination and does not have exclusive, continuing jurisdiction pursuant to this section may modify that determination only if it has jurisdiction to make an initial determination pursuant to NRS 125A.305.

This statute replicates the UCCJEA section 202, which California has adopted as California Family Code section 3422.

risdiction ceases when "[a] court of this state or a court of another state determines that the child, the child's parents and any person acting as a parent do not presently reside in this state." The district court made such a jurisdiction-ending determination in this case when it found that Kevyn, Daniel, and the children no longer resided in Nevada.[4]

Once exclusive, continuing jurisdiction ceases, a court can modify its prior child custody determination "only if it has jurisdiction to make an initial [child custody] determination pursuant to NRS 125A.305." NRS 125A.315(2); *see* UCCJEA § 202 cmt., 9/IA U.L.A. 673 (1999) ("[U]nless a modification proceeding has been commenced, when the child, the parents, and all persons acting as parents physically leave the State to live elsewhere, the exclusive, continuing jurisdiction ceases."). Under NRS 125A.305(1), with certain exceptions not relevant here, a Nevada court has jurisdiction to make an initial child custody determination only if Nevada "is the home state of the child on the date of the commencement of the proceeding," NRS 125A.305(1)(a), or "a court of the home state of the child has declined to exercise jurisdiction on the ground that this State is the more appropriate forum pursuant to NRS 125A.365 or 125A.375," NRS 125A.305(1)(b), and the criteria established in NRS 125A.305(1)(b)(1) and (2) are met.[5] NRS 125A.315(2), in other words, directs the parties back to NRS 125A.305(1), once continuing, exclusive jurisdiction ceases. But NRS 125A.305(1) is phrased in terms of "the commencement of the proceeding," raising a further question, in the modification context, as to the "proceeding" to which the statute refers.

---

[4]NRS 125A.315(1)(a) provides an alternative basis for extinguishing exclusive, continuing jurisdiction: if the court with such jurisdiction "determines that the child, the child's parents and any person acting as a parent do not have a significant connection with" the state and "substantial evidence" "concerning the child's care, protection, training and personal relationships" is no longer available in the state. Paragraphs (1)(a) and (1)(b) are joined by "or," not "and." We thus reject Kevyn's argument that exclusive, continuing jurisdiction remains unless the separate tests stated in each paragraph are both met. *See Anderson v. State*, 109 Nev. 1129, 1134, 865 P.2d 318, 321 (1993) (when the Legislature uses "the disjunctive 'or,' and not the conjunctive 'and,' " the statute "thereby requir[es] one or the other, but not necessarily both").

[5]As the Washington Supreme Court noted in *In re Custody of A.C.*, 200 P.3d at 691 n.3, the UCCJEA "might have more accurately used the term 'exclusive venue' instead of 'subject matter jurisdiction,' " since subject matter jurisdiction "concerns the type of controversy, not the facts of an individual case," and normally does not arise by virtue of one court declining jurisdiction in favor of another otherwise not empowered to exercise it. Like the Washington Supreme Court, for consistency, we nonetheless use the statutory language of subject matter jurisdiction.

The relevant "proceeding" for purposes of determining the "date of the commencement of the proceeding" in a matter referred back to NRS 125A.305(1)(a) by NRS 125A.315(2) is not the original divorce proceeding. Rather, it is the post-divorce motion concerning custody or visitation that controls. This is implicit in NRS 125A.055, which defines "child custody proceeding" to mean "a proceeding in which legal custody, physical custody or visitation with respect to a child is an issue," and NRS 125A.065, which defines "commencement" to mean "the filing of the first pleading in a proceeding." It also comports with the decisional law of other states that have adopted the UCCJEA:

> To hold that "the proceeding" refers to the original dissolution action would confer perpetual jurisdiction over matters of custody to the courts of the state which granted the dissolution, regardless of whether the parties or child had any further connection with that state[,] a result that is contrary to the underlying purpose of the UCCJEA. . . . [W]e [therefore] must interpret "commencement of the proceeding" to mean the recent, post-divorce proceeding concerning the custody of the child.

*Sidell*, 18 A.3d at 506 (quotation and citations omitted); *In re A.C.S.*, 157 S.W.3d 9, 16 (Tex. App. 2004) (jurisdiction must be determined according to facts in existence when motion to modify custody is filed).

Under the UCCJEA, the district court thus was bound to revisit its subject matter jurisdiction when Kevyn filed her August 2010 motion. Although entitled "motion for confirmation of custody and timeshare pursuant to decree of divorce," Kevyn's motion, if granted, would have changed Daniel's physical custody of the children from one week each month to three weekends per month and every Wednesday; maintained primary physical custody with Kevyn, contrary to the initial arrangement's plan to achieve joint physical custody when everyone moved to Los Angeles; and altered holiday timeshare arrangements. These requests initiated a new proceeding, NRS 125A.055, seeking to modify the existing custody and visitation order, and required a fresh jurisdictional analysis under NRS 125A.305(1).

Kevyn concedes that, by August 2010, California had become the children's "home state" as defined by the UCCJEA. *See* NRS 125A.085(1) ("home state" means "[t]he state in which a child lived with a parent or a person acting as a parent for at least 6 consecutive months . . . immediately before the commencement of a child custody proceeding"). This concession, given the district court's finding that the parents and the children presently reside in

California, at minimum, established Daniel's pending California proceeding as "a child custody proceeding . . . commenced in a court in another state having jurisdiction substantially in accordance with the provisions of [the UCCJEA]." NRS 125A.355(2); *see* NRS 125A.305(1)(a); NRS 125A.315(1)(b); Cal. Fam. Code §§ 3421(a)(1), 3422; *In re Marriage of Nurie*, 98 Cal. Rptr. 3d at 220, *questioned on other grounds in In re Marriage of Akula*, 935 N.E.2d 1070, 1078 (Ill. App. 2010).[6] Under NRS 125A.355(2), having made this determination, the Nevada district court was required to "stay its proceeding[,] communicate with the [California] court [, and if the California court] does not determine that the court of this state is a more appropriate forum, . . . dismiss the proceeding."

The district court declined to follow the tightly scripted moves the UCCJEA directs. Instead, it accepted Kevyn's argument that the parties' agreement to a Nevada forum for future child custody disputes removed her family from the UCCJEA. But this position is unsustainable. NRS 125A.305(2) states that NRS 125A.305(1) "is the exclusive jurisdictional basis for making a child custody determination by a court of this State." Since the UCCJEA deems this to involve "subject matter jurisdiction, an agreement of the parties to confer jurisdiction on a court that would not otherwise have jurisdiction under this Act is ineffective." UCCJEA § 201 cmt., 9/IA U.L.A. 673 (1999); *Sidell*, 18 A.3d at 508 (rejecting the argument that the decree state remained the children's "home state" and retained continuing jurisdiction over future custody disputes based on an agreement in the marital settlement agreement; "litigants may not vest the Family Court with jurisdiction by agreement or otherwise"); *In re Custody of A.C.*, 200 P.3d at 693 n.8 ("an agreement to confer jurisdiction under the UCCJEA statute is not effective").[7]

The UCCJEA gives forum selection agreements a role to play in child custody proceedings, but it is a supporting, not a lead, role.

---

[6]This case does not present the issue that led *Akula* to question *Nurie*, on which we express no opinion.

[7]*Hendry v. Hendry*, 771 A.2d 701 (N.J. Super. Ct. App. Div. 2001), on which Kevyn relies, does not advance her cause. *Hendry* was decided under the UCCJEA's predecessor, the Uniform Child Custody Jurisdiction Act (UCCJA). While the UCCJEA retained the central concepts of the UCCJA, *see* UCCJEA prefatory note, 9/IA U.L.A. 650 (1999), "it substantially revised and clarified both the statutory text and the official commentary with the goal of allowing the courts to develop a new and truly uniform body of decisional law to govern interstate child custody disputes. Accordingly, courts must

Thus, a court with UCCJEA jurisdiction may "decline[ ] to exercise jurisdiction on the ground that [another state] is the more appropriate forum," *see* NRS 125A.305(1)(b), (c); Cal. Fam. Code § 3421(a)(2), (3), and in doing so may consider "[a]ny agreement of the parties as to which state should assume jurisdiction." NRS 125A.365(2)(e); *see* UCCJEA § 207(b)(5), 9/IA U.L.A. 682 (1999). But this does not salvage the district court's assertion of agreement-based jurisdiction here. The decision to decline jurisdiction on inconvenient/more appropriate forum grounds is for the court of the state that has UCCJEA jurisdiction to make, not the state to which deferral is pressed. NRS 125A.365(1) ("A court of this state which has jurisdiction pursuant to the provisions of this chapter to make a child custody determination may decline to exercise its jurisdiction . . . ."). Since Nevada's exclusive, continuing jurisdiction ceased when it found Kevyn, Daniel, and the children no longer resided in Nevada, it cannot determine that another state with apparent jurisdiction—here, California—should decline jurisdiction. *See Krebs v. Krebs*, 960 A.2d 637, 643-44 (Md. Ct. Spec. App. 2008).

> This is critical: To allow the state without home state jurisdiction to conduct the [inconvenient/more appropriate forum] hearing would lead to the jurisdictional competition the drafters sought to avoid. Thus the equitable arguments that mother wishes to pursue are not eliminated, but are merely re-directed to the home state. If she chooses, mother can ask the [home state] court to relinquish jurisdiction.

*Id.* at 644 (quotation omitted). *Accord Horgan v. Romans*, 851 N.E.2d 209, 213 (Ill. Ct. App. 2006) (forum selection agreement may be considered in declining jurisdiction but it is not dispositive).

And so it is here. Kevyn and Daniel agreed to Nevada as the forum of choice for future child custody or visitation disputes. Such an agreement is a factor a court having jurisdiction under the UCCJEA may consider in making an inconvenient/more appropriate forum determination. But in declaring itself possessed of jurisdiction and offering that "[t]he California Court can determine that it may request this Court to defer jurisdiction," the district court got things precisely backward. It was up to the Nevada court and/or the parties to ask the California court to decline jurisdiction, not the reverse.

---

avoid a reflexive reliance on pre-UCCJEA case law in interpreting even quite similar provisions of the UCCJEA in order to prevent the inadvertent reincorporation of the defects and failings of the UCCJA into the new uniform act." *Staats v. McKinnon*, 206 S.W.3d 532, 547 (Tenn. Ct. App. 2006) (footnote omitted).

## C.

The foregoing disposes of Kevyn's further argument, citing *Vaile v. Dist. Ct.*, 118 Nev. 262, 44 P.3d 506 (2002), that Daniel is judicially or equitably estopped from contesting Nevada's jurisdiction. A court that lacks subject matter jurisdiction under the UCCJEA does not acquire it by estoppel. "It matters not . . . that the defendant specifically and voluntarily elected the tribunal. It is a well-established principle that 'no action of the parties can confer subject-matter jurisdiction upon a court' where the court has no authority to act." *Sidell*, 18 A.3d at 508 (quoting *Insurance Corp. v. Compagnie des Bauxites*, 456 U.S. 694, 702 (1982)); *see In re A.C.S.*, 157 S.W.3d at 15 (subject matter jurisdiction under the UCCJEA cannot be waived or conferred by agreement or estoppel or "judicial admission").

*Vaile* is not to the contrary. In that case, Scotlund (husband) filed for divorce in Nevada and represented to the district court that he had resided in Nevada for the jurisdictionally required six weeks before filing. 118 Nev. at 267, 44 P.3d at 510. Cisilie's (wife) answer corroborated that Scotlund was a resident of Nevada. *Id.* at 273, 44 P.3d at 514. Relying on these representations, the district court granted the divorce. *Id.* at 267, 44 P.3d at 510. More than two years later, Cisilie moved to set aside the divorce as fraudulently obtained, arguing that Scotlund had not resided in Nevada for the statutorily required six weeks. *Id.* at 268, 44 P.3d at 511. Although Nevada did not have statutory subject matter jurisdiction to grant the divorce, this court judicially estopped Cisilie from contesting jurisdiction, given that she admitted Scotlund's residency allegations in her answer. *Id.* at 273-74, 44 P.3d at 514.

Significantly, the estoppel in *Vaile* only applied to the parents' divorce. The child custody arrangements remained governed by the UCCJA (the governing child custody statute at the time). We held the child custody portions of the divorce decree void for want of jurisdiction, regardless of the parents' representations, thus denying jurisdiction by estoppel under the UCCJA. *Id.* at 275, 44 P.3d at 515. (Unlike Cisilie, Daniel did not make conflicting representations on key matters of fact; the parties' residence simply changed, as the parties acknowledged might occur.)

Kevyn's equitable estoppel argument also cannot justify the district court's exercise of jurisdiction outside the UCCJEA. *Adoption House, Inc. v. A.R.*, 820 A.2d 402, 405 (Del. Fam. Ct. 2003) (under the UCCJEA subject matter jurisdiction cannot be conferred by estoppel); *In re Jaheim B.*, 87 Cal. Rptr. 3d 504, 507 (Ct. App. 2008) ("Subject matter jurisdiction . . . cannot be conferred by . . . estoppel."); *Rosen v. Rosen*, 664 S.E.2d 743,

749 (W. Va. 2008) (same). She argues that she detrimentally relied on Daniel's promise to abide by the agreement Nevada would retain exclusive, continuing jurisdiction no matter where the parties moved. Whatever its merits, this argument needs to be made to the California court, in the context of a motion asking that court to decline jurisdiction under the UCCJEA's inconvenient/more appropriate forum provisions, not to a Nevada court, seeking to persuade it to arrogate jurisdiction to itself that it statutorily does not have. As in *Krebs*, "the equitable arguments that mother wishes to pursue are not eliminated, but are merely re-directed to [what she concedes is the children's] home state." 960 A.2d at 644 (quotation omitted).

## III.

This court has original jurisdiction to issue writs of prohibition and mandamus. Nev. Const. art. 6, § 4. A writ of prohibition may issue to "arrest[ ] the proceedings of any tribunal . . . when such proceedings are without or in excess of the jurisdiction of such tribunal." NRS 34.320. A writ of mandamus may issue "to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station." NRS 34.160. The writ may issue "in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law." NRS 34.330. "Normally, this court will not entertain a writ petition challenging the denial of a motion to dismiss but we may do so where, as here, the issue is not fact-bound and involves an unsettled and potentially significant, recurring question of law." *Buckwalter v. Dist. Ct.*, 126 Nev. 200, 201, 234 P.3d 920, 921 (2010).

The UCCJEA has been described as a "pact" among the states, seeking to promote comity and "to reduce conflicting orders regarding custody and placement of children." *In re Custody of A.C.*, 200 P.3d at 691. The district court's assertion of exclusive, continuing jurisdiction based on the original decree exceeds its authority under NRS 125A.305(1) and NRS 125A.315, which is enough to justify issuing a writ of prohibition. But there is an even more significant jurisdictional excess in this case: The district court's failure to stay its proceedings and to respect California's prerogative, as the home state, to determine whether to proceed or to decline jurisdiction under the UCCJEA's inconvenient/more appropriate forum provisions. NRS 125A.355(2). If the California court—"the court of the state having jurisdiction substantially in accordance with the provisions of [the UCCJEA] does not determine that the court of this state"—the Nevada district court—"is a more appropriate forum, the court of this state *shall* dismiss the proceeding." NRS 125A.355(2) (emphasis added). That California has thus far, as a matter of comity, declined to proceed

in the face of the district court's assumption of jurisdiction does not militate against issuance of writ relief, as Kevyn and the dissent suggest. It argues in favor of the writ, for unless the writ issues, Nevada will have committed the very jurisdictional offense the UCCJEA interdicts.

Here, the district court resolved to exercise jurisdiction over a child custody proceeding despite recognizing that, statutorily, it was without jurisdiction. Prohibition lies to restrain the unauthorized exercise of jurisdiction, *see Westpark Owners' Ass'n v. Dist. Ct.*, 123 Nev. 349, 356, 167 P.3d 421, 426 (2007), especially when invoking jurisdiction would upset the dictates of nationwide public policy. *Mineral County v. State, Dep't of Conserv.*, 117 Nev. 235, 243, 20 P.3d 800, 805 (2001). And, while discretionary, issuing writs to ensure that courts comply with the subject matter jurisdiction laws embodied by the UCCJEA is proper. *See State ex rel. Ferrara v. Neill*, 165 S.W.3d 539, 544 (Mo. Ct. App. 2005) (applying the UCCJA); *Stephens v. Fourth Judicial Dist. Court*, 128 P.3d 1026, 1030 (Mont. 2006); *Rosen v. Celebrezze*, 883 N.E.2d 420, 430-31 (Ohio 2008).

As Daniel has no adequate legal remedy, we therefore grant the petition for the writs of prohibition and mandamus and direct the clerk of this court to issue alternative writs of prohibition and mandamus directing the district court to stand down from its assertion of jurisdiction in this case except to the extent permitted by NRS 125A.355(2) and to dismiss this case unless the California court declines jurisdiction in favor of Nevada.

SAITTA, C.J., and DOUGLAS, HARDESTY, and PARRAGUIRRE, JJ., concur.

CHERRY, J., dissenting:

I would concur with the dissent filed by my colleague, Justice Gibbons, as I too believe that the extraordinary relief requested by the petitioner is not warranted at this time.

I would add that the unique set of facts presented in this case should cause our court to take a closer look at NRS 125A.315 and section 202 of the Uniform Child Custody Jurisdiction and Enforcement Act (1997) to enable fair and just exceptions to the loss of jurisdiction to modify child custody arrangements when both parents have stipulated to Nevada having exclusive jurisdiction over all child custody matters.

With the above in mind, I cannot agree to grant the petition.

GIBBONS, J., dissenting:

I would deny the petition requesting this court to issue a writ of prohibition to prohibit the family division of the district court from exercising subject matter jurisdiction.

Extraordinary writs may only issue in cases "where there is not a plain, speedy and adequate remedy" at law. NRS 34.170; NRS 34.330. The issuance of extraordinary writs is discretionary, not a matter of right. *Valley Health System v. Dist. Ct.*, 127 Nev. 167, 171, 252 P.3d 676, 678 (2011). In this case, the parties executed a parenting agreement that was incorporated into the decree of divorce. Therefore, the divorce decree provides that Nevada has exclusive jurisdiction. At various times, the record reflects that the parties have resided in the states of Nevada, Idaho, and California.

At this time the Superior Court of the State of California has not agreed to exercise jurisdiction. Therefore, the extraordinary relief requested by the petitioner is not warranted at this time.