**132 Nev., Advance Opinion 63**

IN THE SUPREME COURT OF THE STATE OF NEVADA

MEHMET SAIT KAR,
Appellant,
vs.
KATHLEEN A. KAR,
Respondent.

No. 65985

**FILED**

AUG 12 2016

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a district court order denying a motion to modify child custody and support. Eighth Judicial District Court, Family Court Division, Clark County; Sandra L. Pomrenze, Judge.

*Reversed and remanded.*

Law Offices of Amberlea Davis and Amberlea S. Davis, Las Vegas,
for Appellant.

Roberts Stoffel Family Law Group and Jason P. Stoffel and Amanda M. Roberts, Las Vegas,
for Respondent.

_____

BEFORE HARDESTY, SAITTA and PICKERING, JJ.

*OPINION*

By the Court, PICKERING, J.:

This is an appeal from an order denying a motion to modify a Nevada child custody decree. Citing the Uniform Child Custody

Jurisdiction and Enforcement Act (UCCJEA), which Nevada has codified as NRS Chapter 125A, the district court held that it lost jurisdiction to modify its decree when the parents and the child moved away from Nevada. While it is true that the district court lost exclusive jurisdiction over custody upon its determination that "the child, the child's parents and any person acting as a parent do not presently reside in this state," NRS 125A.315(1)(b), the district court erred when it failed to recognize that, under the UCCJEA, it nonetheless retained jurisdiction, which it should have exercised, to ensure that another more appropriate forum existed to resolve the dispute. Because the district court failed to complete the jurisdictional analysis requested by appellant and mandated by the UCCJEA in this setting, we reverse and remand.

## I.

Respondent Kathleen A. Kar and appellant Mehmet Sait Kar, divorced while living in Nevada with their minor child. The decree provided for joint legal custody but awarded Kathleen primary physical custody with Mehmet having visitation two weekends per month. After the divorce, Mehmet moved to Turkey, whereupon Kathleen applied for and obtained an order modifying the decree to give her sole legal and physical custody. Kathleen is in the Air Force and had been stationed at Creech Air Force Base in Nevada. After Kathleen obtained sole custody, the Air Force notified her that she had received a Permanent Change of Duty Station (PCS). The PCS required Kathleen to move from Nevada to England, which she did, taking the child with her.

Two months after Kathleen and the child moved to England, Mehmet filed the motion to modify child custody and support that

underlies this appeal.[1] Kathleen opposed the motion and filed a countermotion to dismiss for lack of jurisdiction. The district court heard oral argument, but did not conduct an evidentiary hearing on the cross-motions. At the hearing, the district court opined that "UCCJEA jurisdiction ends when neither party is living here . . . . That second that she [the mother and the child] moved [to England], I lost jurisdiction." On this basis, the district court orally denied Mehmet's motion to modify child custody and granted Kathleen's countermotion to dismiss. A written order followed, from which Mehmet has timely appealed.

## II.

### A.

The primary issue on appeal is whether the district court was correct that it lost subject matter jurisdiction to hear Mehmet's motion when the parties and the child left Nevada. Resolving this question requires us to examine the interconnected rules of the UCCJEA, which Nevada adopted in 2003 as NRS Chapter 125A. *Friedman v. Eighth Judicial Dist. Court*, 127 Nev. 842, 847, 264 P.3d 1161, 1165 (2011) (citing 2003 Nev. Stat., ch. 199, §§ 1-59, at 990-1004). Although the UCCJEA does not contain an express statement of purpose, the official comments to

---

[1]Although Mehmet's motion also sought to modify child support, the district court did not address whether it had jurisdiction to do so under either NRS Chapter 125B or NRS Chapter 130, an issue distinct from its jurisdiction to modify custody under NRS Chapter 125A. Because the parties did not adequately brief the support issue we do not reach it, *see Edwards v. Emperor's Garden Restaurant*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006), except to the extent of directing the district court, on remand, to analyze whether it had jurisdiction to modify child support.

the Act state that it "should be interpreted according to its purposes which are to: (1) Avoid jurisdictional competition and conflict with courts of other States in matters of child custody which have in the past resulted in the shifting of children from State to State with harmful effects on their well-being; (2) Promote cooperation with the courts of other States to the end that a custody decree is rendered in that State which can best decide the case in the interest of the child; (3) Discourage the use of the interstate system for continuing controversies over child custody; (4) Deter abductions of children; (5) Avoid relitigation of custody decision of other States in this State; [and] (6) Facilitate the enforcement of custody decrees of other States." Unif. Child Custody Jurisdiction & Enf't Act § 101 cmt. (Unif. Law Comm'n 1997), 9 ULA, Part 1A, 657 (West 1999). To these ends, the UCCJEA establishes uniform protocols to be followed in entering, enforcing, and modifying child custody decrees across state or, as here, international lines. *See* NRS 125A.225(1) (entitled "International application" and providing, "A court of this state shall treat a foreign country as if it were a state of the United States for the purpose of applying NRS 125A.005 to NRS 125A.395, inclusive."). So long as the jurisdictional facts are undisputed, jurisdiction under the UCCJEA involves questions of law, which we review de novo. *Friedman*, 127 Nev. at 847, 264 P.3d at 1165.

At the time the parties divorced, Nevada was the child's "home state," which NRS 125A.085(1) tells us is "[t]he state in which a child lived with a parent . . . for at least 6 consecutive months . . . immediately before the commencement of a child custody proceeding." This gave Nevada jurisdiction to make the initial child custody determination under NRS 125A.305(1)(a) ("[A] court of this State has jurisdiction to make an initial

child custody determination . . . if [t]his State is the home state of the child on the date of the commencement of the proceeding . . . ."). Having made the initial custody determination, Nevada acquired "exclusive, continuing jurisdiction" over the Kars' child's custody until, as pertinent here, "[a] court of this state . . . determine[d] that the child, the child's parents and any person acting as a parent do not presently reside in this state." NRS 125A.315(1)(b); *see also* NRS 125A.315(1)(a) (providing that exclusive, continuing jurisdiction may also end if "[a] court of this state determines that the child [and] the child's parents . . . do not have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training and personal relationships"). Once it determined that the child and the child's parents no longer resided in Nevada, the district court lost *exclusive, continuing* jurisdiction under NRS 125A.315(1). But this did not mean, as the district court erroneously held, that it lost *all* jurisdiction in the matter. On the contrary, even after a district court loses exclusive, continuing jurisdiction, it may still modify its own prior order if the criteria NRS 125A.305(1) establishes for a court to obtain jurisdiction over an initial custody determination are met by the motion to modify custody. *See* NRS 125A.315(2) ("A court of this state which has made a child custody determination and does not have exclusive, continuing jurisdiction pursuant to this section may modify that determination only if it has jurisdiction to make an initial determination pursuant to NRS 125A.305."); *Friedman*, 127 Nev. at 848-49, 264 P.3d at 1166 (holding that "commencement of the proceedings" in a UCCJEA modification context refers to the filing of a post-divorce decree motion concerning custody, not the original divorce proceedings).

NRS 125A.305 provides four possible means for a Nevada court to obtain jurisdiction over an initial child custody determination:

1. Except as otherwise provided in NRS 125A.335 [addressing temporary emergency jurisdiction], a court of this State has jurisdiction to make an initial child custody determination only if:

(a) This State is the home state of the child on the date of the commencement of the proceeding or was the home state of the child within 6 months before the commencement of the proceeding and the child is absent from this State but a parent or person acting as a parent continues to live in this State;

(b) A court of another state does not have jurisdiction pursuant to paragraph (a) or a court of the home state of the child has declined to exercise jurisdiction on the ground that this State is the more appropriate forum pursuant to NRS 125A.365 or 125A.375 and:

(1) The child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this State other than mere physical presence; and

(2) Substantial evidence is available in this State concerning the child's care, protection, training and personal relationships;

(c) All courts having jurisdiction pursuant to paragraph (a) or (b) have declined to exercise jurisdiction on the ground that a court of this State is the more appropriate forum to determine the custody of the child pursuant to NRS 125A.365 or 125A.375; or

(d) No court of any other state would have jurisdiction pursuant to the criteria specified in paragraph (a), (b) or (c).

Mehmet concedes, as he must, that his motion to modify did not meet the jurisdictional criteria stated in NRS 125A.305(1)(a), since he filed it two months after Kathleen and the child left Nevada, by which time he was living in Turkey. He also recognizes that, since neither he nor Kathleen had commenced a proceeding in England or elsewhere, NRS 125A.305(1)(c) does not apply. But he maintains that the district court erred in refusing to consider whether it had jurisdiction under NRS 125A.305(1)(b) or NRS 125A.305(1)(d). We agree.

Under NRS 125A.305(1)(b), Nevada would have jurisdiction if the following conditions are met: First, no state has "home state" jurisdiction, or, if a state does, it declined jurisdiction based on an inconvenient forum analysis. Second, the child and at least one parent must have "a significant connection with [Nevada] other than mere physical presence." NRS 125A.305(1)(b). Third, substantial evidence must be available in Nevada regarding "the child's care, protection, training and personal relationships." *Id.*

Here, the only potential courts that could exercise jurisdiction are in Nevada and England because these are the only places where the child has lived. As Mehmet concedes, Nevada no longer has home state jurisdiction. Similarly, at the time the motion to modify was filed, neither did England. The child had lived in England for only two months at the time of the commencement of the action, and so was four months short of making England his home state. *See* NRS 125A.085 (defining "home state"). Thus, the first of the conditions specified for jurisdiction under NRS 125A.305(1)(b)—no state has "home state" jurisdiction—was met.

Because the district court deemed its jurisdiction to have expired the moment Kathleen and the child left Nevada, it did not

consider the second and third conditions for exercising jurisdiction under NRS 125A.305(1)(b): connection of the child and his parents to Nevada other than mere physical presence; and whether there is substantial evidence in Nevada pertaining to the child's care, protection, training, and personal relationships. Mehmet argues that Kathleen and the child had significant connections with Nevada because they "resided there for several years" and the child "was in school in Nevada for at least one year." While Kathleen did not present directly contrary evidence, her counsel represented to the district court that Kathleen has nothing left in Nevada, as evidenced by the fact her car and all belongings are in England.[2] These representations do not persuade us that a significant connection does not exist in Nevada, but does exist in England. *See* Unif. Child Custody Jurisdiction & Enf't Act § 202 cmt. ("The significant connection to the original decree State must relate to the *child*, the *child* and a parent, or the *child* and a person acting as a parent." (emphases added)). Because NRS 125A.305(1)(b) requires a highly factual analysis, we reverse and remand for the district court to determine whether jurisdiction was warranted under that subsection.

NRS 125A.305(1)(d) provides jurisdiction to Nevada as a last resort when no other court could exercise jurisdiction under the criteria of paragraphs (a) through (c). As noted above, the only potential courts that could exercise jurisdiction are in Nevada and England because these are the only places the child has lived, yet neither Nevada nor England qualified as the child's "home state" or under NRS 125A.305(1)(a) when

---

[2]Kathleen's counsel also represented that, when and if she returns to the United States, she plans to make her home in Florida, not Nevada.

the motion to modify was filed. Thus, whether Nevada had default jurisdiction depends on whether England could have exercised jurisdiction under NRS 125A.305(1)(b) or (c). The analysis of England's jurisdiction under NRS 125A.305(1)(b) mirrors that just undertaken with respect to Nevada's potential jurisdiction under the same subsection and is equally fact-bound. Because the child and Kathleen lived in England when Mehmet brought his motion, they clearly had some connection with that country. However, the significance of that connection was not fully developed below. Therefore, this court cannot determine whether England would have "significant connection" jurisdiction based on the record before us; whether Kathleen or the child had a significant connection with England and whether there was substantial evidence in England regarding the child's well-being are questions of fact for the district court to resolve in the first instance.

The final question to determine whether Nevada had default jurisdiction is whether NRS 125A.305(1)(c) provided England with jurisdiction. NRS 125A.305(1)(c) permits a court to exercise jurisdiction when other states that would have jurisdiction under paragraphs (a) or (b) have declined to do so "on the ground that a court of this State is the more appropriate forum to determine the custody of the child pursuant to NRS 125A.365 or 125A.375." This does not apply here because no state other than Nevada had the opportunity to decline jurisdiction. Because Nevada did not have jurisdiction under paragraph (a) and it is unclear whether Nevada has jurisdiction under paragraph (b), the district court's erroneous rejection of jurisdiction did not provide England with jurisdiction under NRS 125A.305(1)(c).

Supreme Court
OF
Nevada

(O) 1947A

9

Thus, while it appears that no other state had jurisdiction under paragraphs (a) or (c) over the parties' custody matter, it is unclear based on the record before us whether England had "significant connection" jurisdiction under paragraph (b). If, upon remand, evidence demonstrates that England did not have "significant connection" jurisdiction, default jurisdiction under NRS 125A.305(1)(d) would be appropriate. Either way, the district court erred when it determined that it lacked jurisdiction over the case simply because neither the parents nor the child lived in Nevada without analyzing jurisdiction under NRS 125A.305(1).

## B.

NRS 125A.365(1) provides that a court "may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum." Kathleen argues that the district court properly determined, sua sponte, that Nevada was an inconvenient forum and directed Mehmet to file in England. *See id.* ("The issue of inconvenient forum may be raised upon motion of a party, the court's own motion or request of another court."). The problem is that, at the time the district court granted Kathleen's countermotion to dismiss, no child custody proceeding had been commenced in England. NRS 125A.365(3) directs that, "If a court of this state determines that it is an inconvenient forum and that a court of another state is a more appropriate forum, *it shall stay the proceedings upon condition that a child custody proceeding be promptly commenced in another designated state . . . ."* (Emphasis added.) When a court declines jurisdiction under NRS 125A.365, in other words, it "may not simply dismiss the action. To do so would leave the

case in limbo. Rather the court shall stay the case and direct the parties to file in the State that has been found to be the more convenient forum." Unif. Child Custody Jurisdiction & Enf't Act § 207 cmt.

## III.

In sum, the district court's loss of exclusive, continuing jurisdiction did not end the jurisdictional analysis. The district court should have considered Mehmet's arguments that it retained jurisdiction to modify its prior custody order by operation of NRS 125A.315(2) and NRS 125A.305. Finally, if the district court determines that it has jurisdiction but that a more convenient forum exists after evaluating the factors under NRS 125A.365, the district court may not cast the parties loose but must stay the proceedings to allow the parties to file in the appropriate forum. Here, because the district court failed to analyze jurisdiction under NRS 125A.305(1) and dismissed, rather than stayed, the proceeding, we reverse and remand for proceedings consistent with this opinion.

_____, J.
Pickering

We concur:

_____, J.
Hardesty

_____, J.
Saitta