142 Nev., Advance Opinion 19

IN THE SUPREME COURT OF THE STATE OF NEVADA

VIKRAMJIT SINGH GILL,
Appellant,
vs.
ANJENA KAUR GILL,
Respondent.

No. 89753

**FILED**

MAR 05 2026

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order denying, for lack of jurisdiction, a motion for child custody and child support. Eighth Judicial District Court, Family Division, Clark County; Heidi Almase, Judge.

*Reversed and remanded.*

Willick Law Group and Marshal S. Willick, Las Vegas,
for Appellant.

Jones & LoBello and Robert Cerceo and John D. Jones, Las Vegas,
for Respondent.

---

BEFORE THE SUPREME COURT, PARRAGUIRRE, BELL, and STIGLICH, JJ.

*OPINION*

By the Court, PARRAGUIRRE, J.:

The Uniform Child Custody Jurisdiction Enforcement Act (UCCJEA) governs jurisdiction over child custody proceedings and aims to avoid simultaneous proceedings in different courts. We take this

26·10349

opportunity to clarify the effect foreign custody proceedings have on a court's determination of its UCCJEA jurisdiction.

In the underlying case, the father of a minor child filed for divorce in Nevada and requested child custody and child support. The district court denied these requests, determining it lacked jurisdiction and noting that a custody action brought in Canada by the mother of the child was ongoing. We conclude that although the child was in Canada for a time preceding commencement of the mother's custody action, the record shows that for jurisdictional purposes, this was a temporary absence from Nevada. Thus, the child is considered to have resided in Nevada for the requisite period to establish home state jurisdiction in Nevada under the UCCJEA. We therefore reverse the district court's order denying the father's request for child custody and support to the extent it failed to recognize that it has jurisdiction.

Nonetheless, the father previously brought a separate proceeding in Canada that resulted in a Hague determination that the child was not returnable to Nevada because Canada is the child's habitual residence, and consequently, it may be appropriate for Nevada to ultimately decline to exercise jurisdiction. Such a determination is premature at this stage, however, because the Canadian court where the mother's custody action is pending has not determined whether it has jurisdiction and the district court has not yet attempted to communicate with the Canadian court. In addition, it would be imprudent to determine that the Canadian court is a more appropriate forum without providing the parties an opportunity to properly brief the issue in the district court. Accordingly, we remand for further proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

Respondent Anjena Gill and appellant Vikramjit (Vick) Gill were married in 2020. Anjena gave birth to a son, K.G., in Las Vegas on April 15, 2023. One month later, the two traveled to Canada for a funeral, but unexpected delays caused them to remain in Canada longer than expected. Vick visited Anjena and K.G. occasionally during their extended stay and communicated with them several times per day. Anjena and Vick discussed plans to expand their family, and Anjena even consulted a fertility clinic while in Canada. At some point during this extended stay, however, the parties' relationship soured.

On November 6, 2023, Anjena moved for custody of K.G. in a Canadian court. Vick responded by initiating Hague proceedings—also in Canada—for the immediate return of K.G.[1] The Hague proceedings resulted in a determination that K.G. was not returnable to Nevada because he was a habitual resident of Canada. Vick appealed that determination but was unsuccessful. He subsequently answered Anjena's Canadian-court custody request and asserted a counterclaim for custody. Throughout the Canadian custody proceedings, Vick has challenged Canada's subject matter jurisdiction. The Canadian court has not determined whether it has subject matter jurisdiction over the custody matter.

Following Vick's unsuccessful Hague petition, he initiated divorce proceedings in the Eighth Judicial District Court of Nevada and moved for custody of K.G., along with child support. The district court

---

[1]The 1980 Hague Convention on the Civil Aspects of International Child Abduction provides parents the opportunity to secure the prompt return of their child when that child was wrongfully removed from their habitual residence. *Lozano v. Montoya Alvarez*, 572 U.S. 1, 4 (2014).

denied Vick's motion for custody of K.G., determining it lacks home state jurisdiction and that a significant amount of litigation already took place in Canada. The district court also denied Vick's child support claim. Vick now appeals, arguing that the district court wrongfully declined to exercise subject matter jurisdiction over the custody and support claims.[2]

## DISCUSSION

"Subject matter jurisdiction is a question of law subject to de novo review," while a district court's factual findings "are given deference and will be upheld if not clearly erroneous and if supported by substantial evidence." *Ogawa v. Ogawa*, 125 Nev. 660, 667-68, 221 P.3d 699, 704 (2009). Like other state courts that have dealt with this issue, we first determine whether Nevada has home state jurisdiction before addressing any restrictions on the exercise of such authority. *See Goodman v. Goodman*, 556 A.2d 1379, 1385 (Pa. Super. Ct. 1989) (employing a two-pronged balancing test to resolve a situation involving potential conflict of jurisdictions); *Katz v. Katz*, 986 N.Y.S.2d 611, 613 (App. Div. 2014) (determining that the court had home state jurisdiction over a custody petition before analyzing a prior Hague determination's effect on the exercise of such jurisdiction).

---

[2]Vick further claims the district court erred in determining that Anjena is entitled to attorney fees, but the record does not indicate that the court actually entered an order awarding fees. Therefore, we do not have jurisdiction to consider the claim. *See Lee v. GNLV Corp.*, 116 Nev. 424, 426, 996 P.2d 416, 417 (2000) (recognizing that an award of fees is an independently appealable special order after final judgment when it is not included in the judgment).

*Whether Nevada is K.G.'s home state under the UCCJEA*

The UCCJEA is aimed at preventing jurisdictional conflicts, avoiding the relitigation of issues relating to child custody, and deterring child abductions. Unif. Child Custody Jurisdiction & Enf't Act § 101, cmt., 9 U.L.A. 657 (1999) (explaining the UCCJEA's purposes). Nevada codified the UCCJEA as NRS Chapter 125A. *See* NRS 125A.005; *Kar v. Kar*, 132 Nev. 636, 638, 378 P.3d 1204, 1205 (2016). The UCCJEA accomplishes its jurisdictional objective by conferring subject matter jurisdiction to the child's "home state." *Ogawa*, 125 Nev. at 668, 221 P.3d at 704. Thus, "the 'home state' [is of] principal importance in custody determinations." *Id.*

NRS 125A.305 governs initial child custody jurisdiction. The statute provides, in relevant part, that a court of this state has jurisdiction over an initial custody determination if

> [t]his State is the home state of the child on the date of the commencement of the proceeding or was the home state of the child within 6 months before the commencement of the proceeding and the child is absent from this State but a parent or person acting as a parent continues to live in this State.

NRS 125A.305(1)(a). Under NRS 125A.085, "home state" means "[t]he state in which a child lived with a parent or a person acting as a parent for at least 6 consecutive months, including any temporary absence from the state, immediately before the commencement of a child custody proceeding." K.G. was born on April 15, 2023. Vick's custody filing was on May 3, 2024, meaning K.G. was about 13 months old when the custody filing was lodged.

Vick argues that K.G. was temporarily absent from Nevada between May 21, 2023, and November 6, 2023. The district court order indicated "[i]t is disputed in the Canadian pleadings whether this was for a temporary visit or a non-temporary visit." While it is true that the parties

SUPREME COURT
OF
NEVADA

(O) 1947A

5

fought over Anjena's intent when she departed Nevada, the Hague determination concluded that Anjena did not form an intent to remain in Canada until November 2023, shortly before commencing her custody proceeding with the Canadian court. This finding of fact was consistent with Anjena's argument made before the Canadian court.[3] Putting this observation aside, the parties do not dispute that Anjena initially departed Nevada to attend a funeral with the intent to return. During her absence, Anjena communicated frequently with Vick and discussed plans to expand their family. Her stay in Canada was prolonged for two reasons—first, the parties' Nevada home had a substantial water leak that required repair, and second, she found temporary employment. Anjena does not oppose Vick's argument that K.G. was temporarily absent between May and November 2023. *See Ozawa v. Vision Airlines, Inc.*, 125 Nev. 556, 563, 216 P.3d 788, 793 (2009) (recognizing a party's failure to respond to a raised argument constitutes a concession). Therefore, the only logical conclusion is that K.G. was temporarily absent from Nevada between May 21, 2023, and November 6, 2023.

Vick's reliance on *Friedman v. Eighth Judicial District Court*, 127 Nev. 842, 264 P.3d 1161 (2011), for support that Anjena's Canadian custody filing started the six-month look-back period is unfounded. In *Friedman*, we recognized that NRS 125A.305(1)(a)'s "commencement of the proceeding" language was ambiguous as to jurisdiction over a child custody modification proceeding. 127 Nev. at 848, 264 P.3d at 1166. We acknowledged that once a court has home state jurisdiction over an initial

---

[3]Anjena argues that Canada's findings of fact were made in substantial conformity with NRS Chapter 125A, require full faith and credit, and should not be relitigated in Nevada.

Supreme Court
OF
Nevada

(O) 1947A

6

custody determination, it has exclusive, continuing jurisdiction to modify custody orders until that jurisdiction ceases. *Id.* at 847-48, 264 P.3d at 1165-66. But in the event exclusive, continuing jurisdiction ceases, the parties are directed back to NRS 125A.305 to determine which court has jurisdiction over the modification proceeding. *Id.* at 848, 264 P.3d at 1166. We clarified that, in that context, NRS 125A.305(1)(a)'s "commencement of the proceeding" language refers to "the post-divorce motion concerning custody or visitation," not the original divorce proceeding. *Id.* at 848-49, 264 P.3d at 1166. But in determining whether a district court has UCCJEA jurisdiction over an initial custody proceeding, we must calculate the six-month look-back period from the date of "the commencement of the proceeding." NRS 125A.305(1)(a). In other words, the operative date here is the date Vick filed for divorce in Nevada, which was May 3, 2024. Therefore, the district court did not err in calculating the six-month look-back period from May 3, 2024.

As detailed, however, the district court failed to recognize that K.G. was temporarily absent from Nevada prior to the divorce filing. Thus, for jurisdictional purposes, K.G. is considered to have resided in Nevada until November 6, 2023. Because K.G. did not depart the state for jurisdictional purposes until November 6, 2023, less than six months prior to the date Vick commenced his divorce proceeding and sought child custody, Nevada had home state jurisdiction over K.G. We now turn to the effect of the Canadian proceedings on Nevada's jurisdiction.[4]

---

[4]Because we conclude that Nevada had home state jurisdiction when K.G.'s temporary absence is taken into account, we need not reach Vick's argument that the Hague proceedings paused the UCCJEA jurisdictional timer from December 14, 2023, to April 25, 2024. Anjena also argues that

*Whether the Hague or Canadian proceedings affected Nevada's home state jurisdiction*

We first address the Hague proceedings. Vick argues the Hague determination is irrelevant because the Hague Convention aims at *returning* a child to their country of "habitual residence"—a different inquiry than whether a court has jurisdiction to make a child custody determination under the UCCJEA. The different objectives of the Hague Convention and the UCCJEA lend some superficial support to Vick's argument. *Cf. Katz v. Katz,* 986 N.Y.S.2d 611, 613 (App. Div. 2014) (holding a prior Hague determination by a court in the Dominican Republic did not affect a New York court's exercise of home state jurisdiction over a custody petition). But in assessing the policy implications surrounding the Hague, we are not convinced that the Hague determination is wholly irrelevant.

The United States Supreme Court has recognized that "the opinions of our sister signatories to a treaty are due considerable weight . . . [and given] special force." *Monasky v. Taglieri,* 589 U.S. 68, 79 (2020) (citation modified). Hague determinations are intended to ensure, in part, that "custody decisions are made in the child's country of habitual residence." *Id.* at 72 (citation modified). It therefore follows that, typically, once a child's habitual residence is determined in a return action, "the custody adjudication will proceed in that forum." *Id.* These considerations weigh strongly in favor of respecting the Hague determination that Canada is K.G.'s habitual residence. To be clear, it is not that the Nevada court lacks home state jurisdiction based on the Hague determination. Rather,

---

judicial estoppel should bar Vick from seeking relief in Nevada, but as we recognized in *Friedman,* judicial estoppel cannot be used to foreclose challenges to subject matter jurisdiction. 127 Nev. at 852, 264 P.3d at 1168.

SUPREME COURT
OF
NEVADA

(O) 1947A

such determination is relevant in deciding whether to relinquish jurisdiction under NRS 125A.365(1), which provides that a Nevada court "may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum." Moreover, relinquishing jurisdiction appears consistent with the 1996 convention adopted by the Hague Conference on Private International Law, which addresses, among other things, jurisdiction over child custody determinations as between member countries. Gloria F. DeHart, *Introductory Note*, Hague Conference on Private International Law: Final Act of the Eighteenth Session with the Convention on Jurisdiction, Applicable Law, Recognition, Enforcement and Co-operation in Respect of Parental Responsibility and Measures for the Protection of Children, and Decisions on Matters Pertaining to the Agenda of the Conference, 35 I.L.M. 1391, 1392 (1996) (recognizing "the basic core of the Convention [was to] establish[ ] 'habitual residence' as the primary jurisdictional standard" and explaining that "[w]hen the child's habitual residence changes, jurisdiction follows"). And although the United States and Canada have not ratified the 1996 convention, both countries are signatories. Given these considerations, deferring jurisdiction to Canada may ultimately be appropriate. We conclude, however, that declining jurisdiction would be premature at this stage of litigation due to the uncertain status of the pending custody proceedings in Canada.

Crucially, at oral argument, the parties revealed that the Canadian court where Anjena filed her custody action has not determined whether it has subject matter jurisdiction. Anjena conceded that the court in Canada only entered an order formally honoring the Hague determination without engaging in a substantive analysis about whether

Canada actually has jurisdiction. Anjena also conceded that the Canadian court's order recognizing the Hague determination is not binding on this court and indicated that the Canadian court is going to determine whether it has jurisdiction at an upcoming trial.

Based on these revelations, it is unclear at this time whether Canada will exercise jurisdiction. While the Canadian court seems to be the more appropriate forum to decide the underlying custody dispute, making such determination without providing the parties an opportunity to properly brief the district court would be imprudent. *See* NRS 125A.365(2) (recognizing that before declining jurisdiction, "the court shall allow the parties to submit information and shall consider all relevant factors"). Moreover, "we are a court of review, not first view." *Roth v. Foris Ventures, LLC*, 86 F.4th 832, 838 (9th Cir. 2023) (quoting *Shirk v. United States ex rel. Dep't of Interior*, 773 F.3d 999, 1007 (9th Cir. 2014)); *see Moody v. NetChoice, LLC*, 603 U.S. 707, 726 (2024) (remanding for further proceedings because "[t]he parties have not briefed the critical issues here, and the record is underdeveloped").

Therefore, we reverse the order declining to exercise jurisdiction and remand to the district court for further proceedings. When simultaneous proceedings take place, the common practice is for the trial courts of each state to communicate with each other through a UCCJEA conference. *See* NRS 125A.355(2). But Canada has not adopted the UCCJEA, and we cannot compel its courts to communicate with Nevada's courts. With that said, we instruct the district court on remand to attempt to contact the Canadian courts to hold a UCCJEA-equivalent conference, as Nevada law contemplates such conferences. *See* NRS 125A.355(2); *see also* NRS 125A.275. The district court should also direct briefing from the

SUPREME COURT
OF
NEVADA

(O) 1947A

10

parties and conduct a proper analysis pursuant to NRS 125A.365 to determine whether Nevada is the most appropriate forum to exercise jurisdiction.

*Vick's child support claim*

Vick argues that the district court erred in dismissing his child support claims because the parties stipulated that Nevada is the proper jurisdiction for such claims. Anjena counters that the Canadian court where she filed for custody has subject matter jurisdiction to issue child support orders and that Nevada must honor such orders under NRS Chapter 130. As discussed, the Canadian court has not determined whether it has subject matter jurisdiction. Moreover, Vick cites nothing besides his own district court argument as record support for his assertion that Anjena stipulated to Nevada presiding over the child support claim. This is insufficient. *See Browning v. State*, 120 Nev. 347, 361, 91 P.3d 39, 50 (2004) (noting a claim warrants no consideration when the appellant fails to "provide[ ] any cogent argument, legal analysis, or supporting factual allegations").

Nevertheless, we note that child custody and support claims are ordinarily considered in unison, as contemplated in our caselaw and Nevada's statutory scheme. *See Bluestein v. Bluestein*, 131 Nev. 106, 109 n.1, 345 P.3d 1044, 1046 n.1 (2015) (recognizing that "[t]he physical custody arrangement governs the child support award"); NRS 125B.030 (providing that parents with physical custody over a child may seek child support); NRS 125C.0045 (providing that a court may enter an order "for the custody, care, education, maintenance and support of the minor child as appears in his or her best interest" during a custody action). Because Vick's child custody and support claims are intertwined, we deem it appropriate to keep the claims together. Therefore, we instruct the district court to exercise

jurisdiction over both the child custody and support claims until it resolves whether it will defer jurisdiction to Canada. Whichever court ultimately retains jurisdiction over the custody dispute will likely be in the best position to also address the child support claim.

## *CONCLUSION*

Because K.G. had lived in Nevada for more than six months, including the temporary absence, when Vick filed for divorce and child custody, Nevada had home state jurisdiction over Vick's child custody claim. We thus reverse the district court's order denying Vick's request for child custody and support to the extent that it failed to recognize Nevada as K.G.'s home state. The Hague determination concluding that the minor child's habitual residence was in another country suggests, however, that Nevada should decline to exercise such jurisdiction. Therefore, we remand the matter to the district court with instructions to properly consider whether the Canadian court is a more appropriate forum.

_____, J.
Parraguirre

We concur:

_____, J.
Bell

_____, J.
Stiglich

